STATE OF MARYLAND *v.* SHERMAN BURTON

[No. 923, September Term, 1974.]

*Decided June 4, 1975.*

The cause was argued before GILBERT, MOORE and MASON, JJ.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Walter T. Seidel, Assistant State's Attorney for Baltimore City,* on the brief, for appellant.

*Leonard C. Redmond, III, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Sherman Burton was convicted by Judge William J. O'Donnell, at a non-jury trial, in February 1965 of burglary, and sentenced to four years imprisonment. Burton was, on July 2, 1965, referred to Patuxent Institution for an

evaluation. Subsequently, on May 25, 1966, Burton was found by Judge James K. Cullen, at a non-jury proceeding, to be a defective delinquent within the meaning of Md. Ann. Code art. 31B, § 5, and Burton was committed to Patuxent. Later, in November 1969, Burton had a redetermination hearing by a jury, presided over by Judge Cullen. The jury found Burton to be a defective delinquent, and this Court denied Burton's application for leave to appeal.[1] In January 1974 Burton once again petitioned for a redetermination of whether he was a defective delinquent. At the conclusion of the State's presentation of evidence, Burton moved for a directed verdict. Judge Mary Arabian granted the motion, dismissed the jury and ordered Burton released from Patuxent. The State was aggrieved and sought leave to appeal to this Court. We granted the leave, and the matter was transferred to the direct appeal docket. The case is now before us on the sole issue of whether Judge Arabian erred in granting Burton's motion for a directed verdict.

At the trial of this matter the State introduced the testimony of Charles Brennenger, a staff psychologist of the Patuxent Institution. Mr. Brennenger testified that "the Institutional Diagnostic Staff on September 23, 1969" examined the appellee and found that he "continue[d] to satisfy the criteria of defective delinquent. . . . " Subsequent to the September 1969 finding there was no similar conclusion reached by the Diagnostic Staff, although the Institutional Board of Review hearing report for the period June 21, 1973 to June 20, 1974, had stamped upon it, in red ink, "Still a defective delinquent." There was no evidence as to who placed the stamp upon the record, or more important who authorized such stamping.

Mr. Brennenger, who had never personally examined the

---

1. We denied the application in an unreported per curiam opinion, Burton v. Director, Application for Leave to Appeal (Defective Delinquent), No. 107, September Term, 1973, filed December 6, 1973, manifestly well after the four year term to which Burton had been originally sentenced. Patently, had not Burton been in the Patuxent Institution, he would have been released from confinement in 1969, at the latest. The inordinate delay in processing the application for leave to appeal was occasioned by Burton's dissatisfaction with his then counsel, counsel's inability to contact Burton, and Burton's transfer to Clifton T. Perkins Hospital.

appellee, conceded that the appellee was suffering from schizophrenia, however, Brennenger took the position that schizophrenia is not a mental illness, but rather an emotional disturbance. Mr. Brennenger then reasoned that appellee, being emotionally unstable, fell within the meaning of Md. Ann. Code art. 31B, § 5, and was, consequently, a defective delinquent. The psychologist stated flatly that he disagreed with the American Psychiatric Association that schizophrenia is a mental illness. The witness concluded that the appellee is a defective delinquent because (1) he had seen nothing in the records that indicated appellee had changed since he first went to Patuxent, and (2) because appellee had active episodes of psychosis. Judge Arabian asked:

> "But let me understand what you said, sir. You say that schizophrenia is not a mental illness?
> The Witness: I do not look upon it as a mental illness.
> The Court: But you have been referring to it as a psychosis?
> The Witness: Yes, ma'am.
> The Court: Is not a psychosis a mental illness?
> The Witness: No, ma'am, not in my opinion."

The witness went on, in answer to the judge's questions, to agree that appellee was mentally ill within the meaning of Md. Ann. Code art. 59, § 3 (g). *See also Sherrill v. State*, 14 Md. App. 146, 286 A. 2d 528 (1972).

The State's second witness, Dr. Carmacita Mola, a staff psychiatrist from Clifton T. Perkins Hospital, testified without equivocation that the appellee was schizophrenic, paranoid type, and was suffering from a mental illness within the meaning of the Maryland Code. Dr. Mola was unable to give an opinion as to whether appellee was a defective delinquent because she was unfamiliar with the definition of the term. She did say, however, that "when . . . [a person] is having a mental illness he can at times be emotionally unbalanced."

Maryland Ann. Code art. 31B, § 5 provides:

" . . . [A] defective delinquent shall be defined as an individual who, by the demonstration of persistent aggravated anti-social or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment."

The State here argues that the evidence adduced at the hearing clearly indicates that appellee is emotionally unbalanced, hence a defective delinquent. We agree that the evidence shows that appellee may be emotionally unbalanced, but the State, in our view, *proved* that appellee suffered from schizophrenia, a recognized mental illness within the meaning of Md. Ann. Code art. 59, § 3 (g).

The Court of Appeals in *Director v. Daniels*, 243 Md. 16, 221 A. 2d 397 (1966), speaking through Judge Hammond, (later Chief Judge), quoted with approval the language used by Judge Digges, (now an Associate Judge of the Court of Appeals, but then Chief Judge of the Seventh Judicial Circuit), and Judge Ralph W. Powers, (now Chief Judge and Administrative Judge of the Seventh Judicial Circuit), when they, as hearing judges in *Daniels*, stated:

*"The defective delinquent is not psychotic and does not suffer from any form of delusions, hallucinations, phobias, obsessions, anxiety states or depressions different in kind from the normal person and therefore psychotics are of necessity excluded from the Maryland definition of a defective delinquent."* (Emphasis supplied). *Daniels, supra*, Appendix A at 56.

The State asserts that the quoted language of *Daniels* does not apply to the present case because there is nothing in

*Daniels* to "support the proposition that an individual once committed to Patuxent Institution who becomes psychotic or legally insane might still not fit the definition, once cured." The State further suggests that the quote from *Daniels* "is just a general conclusion drawn by the Circuit Court for Prince George's County subsequent to the trial in that case."

It is apparent from a reading of *Daniels,* that the Court of Appeals did not see the hearing court's findings in the same light as the State now views them. We observe that Judge Hammond declared for the Court at 28:

> "We have read the record with meticulous care and considered it at length with full deliberation, and *we are convinced that the conclusions reached by the trial court rest on a foundation of sound law properly applied to proven justifying facts. The careful and thorough opinion* of Judge Digges and Powers *and the Appendix A 'Court's Findings of Fact' and Appendix B 'Trial Summary' are adopted as the expression of the reasons we agree with the trial court* and are to be printed as part of the opinion herein of this Court. . . . " (Emphasis supplied).

The language employed by the Court of Appeals in adopting "Appendix A" of *Daniels* does not give rise to a justifiable conclusion by the State that it is *dicta,* or in the State's words, merely "a general conclusion drawn by the Circuit Court for Prince George's County." As we read what Judge Hammond has so carefully said, the Court of Appeals adopted *in toto* as its own "the expression of the reasons" given by Judges Digges and Powers in the trial court. Included among those reasons is the holding that psychotics are not within the ambit of the defective delinquency law.

We do not in this opinion reach the issue of whether a person who has been adjudged a defective delinquent and, later, while in confinement becomes psychotic, can after being cured of the psychosis, still be a defective delinquent. The reason that we do not reach that issue is that there was no evidence presented to the hearing court that directly

dealt therewith. As we read the record, the State proved appellee to be insane within the scope of Md. Ann. Code art. 59, § 3 (g), but the record does not disclose that he was "cured", nor that he remained a defective delinquent.

We think Judge Arabian correctly directed a verdict in favor of the appellee.

*Judgment affirmed.*