RONALD DAVIS *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 478, September Term, 1975.]

* * *

RUPERT LEROY POWELL *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 597, September Term, 1975.]

* * *

ROBERT N. SHORTER *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 612, September Term, 1975.]

* * *

LOUIS CANE *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 862, September Term, 1975.]

*Decided January 27, 1976.*

706

The causes were argued before ORTH, C. J., and MORTON and MOYLAN, JJ.

*Donald B. W. Messenger, Assigned Public Defender,* with whom was *G. Dent Lynch, Jr., Assigned Public Defender,* on the brief, for appellant Ronald Davis.

*Leonard C. Redmond, III, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Victoria A. Salner, Assistant Public Defender,* on the brief, for appellant Rupert Leroy Powell.

*Philip L. Marcus, Assigned Public Defender,* for appellant Robert N. Shorter.

*Joseph F. McBride, Assigned Public Defender,* for appellant Louis Cane.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, James S. Nickelsporn* and *Anthony McCarthy, Assistant State's Attorneys for Prince George's County* and *William A. Swisher, State's Attorney for Baltimore City,* and *Stephen A. Wilder, Assistant State's Attorney for Baltimore City,* on the briefs, for appellee.

ORTH, C. J., delivered the opinion of the Court.

The primary issue in these appeals is whether the application of the preponderance of the evidence standard in defective delinquency proceedings offends the constitutional guarantee of equal protection of the laws.[1] We hold that it does not.

---

1. "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Amendment XIV, § 1 of the Constitution of the United States.

## THE LAW OF MARYLAND

It is the firmly established law of Maryland that the sufficiency of the evidence in a defective delinquency proceeding is to be tested by the preponderance of the evidence standard.[2] This rule was early enunciated by the Court of Appeals, *Purks v. State*, 226 Md. 43 (1961),[3] consistently followed by that Court, *e.g., Crews v. Director*, 245 Md. 174, 180 (1967), *Dickerson v. Director*, 235 Md. 668, 670 (1964), and by the Court of Special Appeals, *e.g., Long v. Director*, 8 Md. App. 627, 632 (1970), *Walker v. Director*, 6 Md. App. 206, 211 (1969), and recently confirmed, explicitly by the Court of Special Appeals in *Bush v. Director*, 22 Md. App. 353, 360 (1974), and implicitly by the Court of Appeals in denying *certiorari* in that case, *sub nom. Mazan v. Director*, 272 Md. 745 (1974).

In *Bush v. Director, supra,* decided 8 August 1974, we were faced squarely with the contentions that the application of the preponderance of the evidence standard in defective delinquency proceedings denied the constitutional guarantees of due process of law and of equal protection of the laws. We held that those rights were not offended by the standard, thus maintaining inviolate the long standing rule

---

**2.** The law pertaining to defective delinquents was enacted by ch. 476, Acts 1951, to take effect on 1 June 1952. It created an institution for defective delinquents known as the Patuxent Institution. As amended by ch. 558, Acts 1957, if upon examination by the Institution it was determined that a person was a defective delinquent, the person was entitled to contest the finding at a judicial hearing and at such hearing "the burden of proof shall be upon the [diagnostic] clinic to establish by a preponderance of the evidence that said person is a defective delinquent." § 4 (c) (2). See Blizzard v. State, 218 Md. 384, 387 (1958). This language disappeared from the statute with the extensive amendments enacted by Acts 1961, ch. 629. Under the law now in effect, a judicial hearing to determine defective delinquency *vel non* automatically follows an evaluation by the Institution that a person is a defective delinquent. Code, art. 31B, § 8.

For a history of the defective delinquency statute, see Director v. Daniels, 243 Md. 16, 30-33 (1966).

**3.** The Court said in *Purks*, at 46: "Thus, while the burden of persuasion is on the State, a fair preponderance of evidence — and not proof beyond a reasonable doubt — is all that is required to sustain a finding of defective delinquency." This was consistent with the holding in Eggleston v. State, 209 Md. 504, 515 (1956), and steadfastly maintained thereafter, that defective delinquency proceedings are civil in nature. See Bush v. Director, 22 Md. App. 353, 360, n. 7 (1974).

of this State. The equal protection challenge to the application of the standard was on the ground that the test for the sufficiency of the evidence to commit a person as a defective delinquent was "lower" than the test for the involuntary commitment of a person to mental health facilities under Code, art. 59, "Mental Hygiene", and its associated regulations. *Bush* recognized that by § 6 of art. 59 "The Secretary of Health and Mental Hygiene shall make such rules and regulations for the administration and enforcement of this article and for the operation and administration of the Department [of Health and Mental Hygiene] as are needed." The Court was aware that the Secretary had promulgated Regulation 10.04.03, effective 5 December 1970, applying "to every patient whose admission is sought to be effected, on an involuntary basis, to any mental health facility licensed by or under the jurisdiction of the Department. . . .", except institutions for the care of mentally retarded patients. The opinion pointed out that § .03G of the Regulation, as amended effective 1 October 1973, required that every patient who is involuntarily confined to a mental health facility is to be afforded a hearing, at which, in order to justify the admission or retention of the patient, it must be shown by clear and convincing evidence that he is suffering from a mental disorder, and is in need of institutional in-patient care or treatment, and presents a danger to his own life or safety or the life or safety of others. 22 Md. App., at 361. We perceived no denial of equal protection. Gilbert, J., speaking for the Court, observed that there were "vital differences between the Secretary's regulations and Md. Ann. Code, art. 31B, 'Defective Delinquency'." The differences in procedure were set out in tabular form, and we declared: "A perusal of the above comparison table makes it crystal clear that an alleged defective delinquent is not denied equal protection of the law." *Id.*, at 362. We compared the elements of defective delinquency with the elements necessary to justify admission to a mental hygiene facility, at 362-363. We quoted with approval, at 365, what Winter, J. said in *Monroe*

*v. Director*, 227 F. Supp. 295, 303 (D. Md. 1964) [4] in rejecting an equal protection attack upon the defective delinquency law grounded on the fact that defective delinquents are not eligible for parole:

> " 'The short answer to such an argument is that when a person has committed a crime and is found to be deficient in either the intellectual or emotional qualities, or both, and to possess the other opprobrious qualities which render him a defective delinquent, *it is not unreasonable for the legislature to treat him differently from the criminal not a defective delinquent, or the incompetent not a criminal*.' (Emphasis supplied)."

We referred, at 366-367, to the distinctions made by Hammond, C. J. in *Director v. Daniels, supra,* at 30-31, between defective delinquents and those who are *non compos mentis.* We concluded, at 367, that Maryland's election to treat those persons alleged to be defective delinquents differently from those alleged to be subject to admission to a mental hygiene facility does not violate the equal protection rights. Upon denial of *certiorari* in *Bush, sub nom., Mazan v. Director*, 272 Md. 745 (1974), our holding therein stood as the law of this State.

## THE EFFECT OF DOWER v. DIRECTOR

On 8 May 1975, the United States District Court for the District of Maryland decided *Dower v. Director*, 396 F. Supp. 1070.[5] Four inmates of Patuxent Institution, who had been convicted of felonies and adjudicated defective delinquents,

---

4. On appeal, *sub nom.*, Hayes v. Boslow, 336 F. 2d 31 (4th Cir. 1964), *Monroe* was remanded for consideration in light of Sas v. Maryland, 334 F. 2d 506 (4th Cir. 1964). *Certiorari* was denied by the Supreme Court, 386 U. S. 1039 (1967).

5. The federal court noted, 396 F. Supp., at 1088, n. 32: "This Court, with the consent of all counsel, held the within case *sub curia* until the final termination of the *Bush* case, in the interests of comity and so as to obtain a definitive statement of the Maryland law relating to certain of the issues posed herein."

*Dower* is presently pending on appeal before the United States Court of Appeals for the Fourth Circuit.

sought habeas corpus relief on the ground that their original commitment to, and continued confinement at, the Institution was in violation of their constitutional rights.[6] Among the contentions presented to the court were those regarding the standard of proof which were before us in *Bush.* The federal District Court concluded, as did we, that Maryland's utilization of the preponderance of the evidence test in defective delinquency proceedings passed federal constitutional muster insofar as due process considerations were concerned. But its view with respect to the equal protection ground was different from ours. It quoted extensively from our discussion concerning the equal protection aspect of the preponderance of evidence standard and disagreed. 396 F. Supp., at 1089. It held that "equal protection principles require that there be utilized in a hearing involving determination or redetermination of defective delinquency a standard no less than the standard Maryland utilizes with regard to civil commitment." *Id.,* at 1090. The civil commitment standard, it found, was the clear and convincing evidence requirement of the Department of Mental Health and Hygiene Regulation 10.04.03G. Therefore, the court concluded, any person who was determined to be a defective delinquent by application of the preponderance of the evidence standard on or after 1 October 1973 was denied equal protection of the law and was entitled to a new hearing.[7] The federal court reached its conclusion basically through *Murel v. Baltimore City Criminal Court.* 407 U. S. 355 (1972). Habeas corpus proceedings were instituted by certain inmates committed to Patuxent Institution as defective delinquents. They challenged on constitutional grounds the criteria and

---

6. The opinion disposed of four cases: James Lee Dower v. Director, Bernard Howard Brooks v. Boslow, Duane Alan Carl v. Director, and Albert E. Hawkins v. Boslow.

7. On this basis, Carl, adjudged a defective delinquent on 2 November 1973, was denied equal protection of the law and was entitled to a new hearing. Dower, Brooks, and Hawkins, determined to be defective delinquents on 28 November 1972, 31 July 1972, and 17 December 1971, respectively, were not denied that constitutional right and their hearings were not constitutionally defective.

712

procedures that led to their commitment, and the conditions of their confinement. Among their contentions was that they were entitled to put the State to the burden of proof beyond a reasonable doubt. The District Court denied relief *sub nom. Sas v. Maryland*, 295 F. Supp. 389 (Md. 1969), and the Court of Appeals affirmed *sub nom. Tippett v. Maryland*, 436 F. 2d 1153 (4th Cir. 1971). The Supreme Court granted *certiorari*, 404 U. S. 999 (1971) to consider whether, and to what extent, the constitutional guarantees invoked by the petitioners applied to this kind of commitment process. After briefing and oral argument, it appeared that the case did not present the issues in a manner that warranted the exercise of the *certiorari* jurisdiction of the Court. By a *per curiam* opinion, to which Mr. Justice Douglas dissented, the Court dismissed the writ as improvidently granted. In doing so, it said, 407 U. S., at 357-358:

> "Under our decisions in Baxstrom v. Herold, 383 U.S. 107[, 86 S.Ct. 760, 15 L.Ed.2d 620] (1966), Humphrey v. Cady, 405 U.S. 504[, 92 S.Ct. 1048, 31 L.Ed.2d 394] (1972), and Jackson v. Indiana, 406 U.S. 715[, 92 S.Ct. 1845, 32 L.Ed.2d 435] (1972), petitioners' challenge to the Maryland Defective Delinquency Law should be considered in relation to the criteria, procedures, and treatment that the State of Maryland makes available to other persons, not 'defective delinquents,' committed for compulsory psychiatric treatment. We are informed that the statutes governing civil commitment in Maryland are presently undergoing substantial revision, designed to provide greater substantive and procedural safeguards to committed persons. Accordingly, it seems a particularly inopportune time for this Court to consider a comprehensive challenge to the Defective Delinquency Law."

The District Court in *Dower* thought that the question before it was "the one the Supreme Court seemingly reserved in *Murel, i.e.,* the extent to which Maryland may

under equal protection principles provide different 'criteria, procedures, and treatment' for Patuxent inmates on the one hand and 'to other persons, not 'defective delinquents,' committed for compulsory psychiatric treatment', on the other hand, regardless of whether Maryland so does by statute, administrative regulation, or a combination thereof." 396 F. Supp., at 1090. We accept, *arguendo*, that under *Baxstrom, Humphrey,* and *Jackson,* the issue here — whether the application of the preponderance of the evidence standard in defective delinquency proceedings offends the constitutional guarantee of equal protection of the laws — should be considered in relation to the clear and convincing evidence standard required with respect to an involuntary admission to a mental hygiene facility. In doing so, however, we do not arrive at the answer found by the federal District Court. We reach the same conclusion we attained in *Bush* and for the same reasons therein set out. We abide by the reasoning of *Bush* and adhere to and expressly affirm its holding. Although a decision of a federal district court or a United States court of appeals may persuade us, it is not binding upon us.[8] *Wiggins v. State,* 275 Md. 689 (1975). In this instance we are not persuaded.

At the least implicitly, the *Dower* opinion equates defective delinquents with those subject to involuntary admission to a mental hygiene facility. We think they properly fall into different classes. A defective delinquent is "an individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment." Code, art. 31B, § 5. But before such a person

---

8. Decisions of the United States Supreme Court are, of course, conclusive on federal questions. Art. 2, Declaration of Rights, Constitution of Maryland; Wilson v. Turpin, 5 Gill 56 (1847); Howell v. State, 3 Gill 14 (1845).

714

may even be examined for possible defective delinquency he must have been convicted and sentenced in a court of this State for a crime coming under certain categories as prescribed by art. 31B, § 6 (a). For a person to be involuntarily admitted to a mental hygiene facility, however, it must be established that he is suffering from a mental disorder, needs in-patient care or treatment, and presents a danger to his own life or safety or the life or safety of others. *Dower* looks to the statutory definition of "mental disorder" in the Mental Hygiene Article which declares, as amended, effective 1 July 1972: "*'Mental disorder'* means mental illness or any other form of behavioral or emotional illness resulting from any psychiatric or neurological disorder. The term shall not include mental retardation." Code, art. 59, § 3 (f).[9] In *State v. Weeder*, 22 Md. App. 249, 257 (1974), reversed on other grounds, *Weeder v. State*, 274 Md. 626 (1975), we said that a finding by Patuxent Institution that a person "was essentially without any mental disorder" does not *per se* eliminate defective delinquency. And in *State v. Burton*, 26 Md. App. 591, 594-596 (1975), we held that a person suffering from a recognized mental illness within the meaning of art. 59, § 3 (g), and psychotics, even though "emotionally unbalanced" were not defective delinquents. Thus, the mental hygiene law applies only to those who are suffering from a mental disorder as defined in terms of mental illness or other form of behavioral or emotional illness *resulting from any psychiatric or neurological disorder*. On the other

9. "Mental illness" is defined by § 3 (g) as "any mental disorder which so substantially impairs the mental or emotional functioning of an individual as to make it necessary or advisable for the welfare of the person so suffering or for the safety of the persons or property of others that the mentally ill person receive care and treatment. The term shall replace the words 'insane,' 'insanity,' 'lunacy,' 'mentally sick,' 'mental disease,' 'unsound mind' and similar words as they appear in the statutes of the State of Maryland."

*Dower* quoted the mental disorder definition and referred to the "mentally retarded" definition set out in art. 59A, § 3 (j) in concluding that because the statutory provisions dealing with release of defective delinquents, the mentally disordered and the mentally retarded were substantially similar, no rights under the equal protection clause were violated "insofar as those release provisions are concerned." 396 F. Supp., at 1086-1087.

hand, a person suffering from a mental illness within the meaning of the mental hygiene law is excluded from the defective delinquency law. And, we note, "mental retardation" is expressly not included in the term "mental illness." "Mental retardation", however, as "intellectual deficiency" is included among the elements of defective delinquency, so that a mentally retarded person, meeting the other criteria of art. 31B, § 5, is a defective delinquent. Even if, as *Dower* indicates, at 1090, *Murel* "suggests strongly that the difference with regard to standard of proof, existing in Maryland since October 1, 1973, as between defective delinquents on the one hand and civil committees on the other hand, may not prevail unless there is a strong reason therefor", that strong reason is obvious from the differences above discussed between the defective delinquent and the mental hygiene committee. We iterate the language of *Baxstrom*, 383 U. S., at 111, which we quoted in *Bush*, at 367: "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." Persons who are subject to involuntary admission to a mental hygiene facility under Regulation 10.04.03 and art. 59 comprise a separate and distinct class from those who are defective delinquents under art. 31B. As we held in *Bush*, at 367, Maryland's election to treat the former differently from the latter does not violate the equal protection rights of the defective delinquent.[10]

We have a further observation. Art. 31B provides for a judicial hearing for determination *vel non*, by a court or by a jury, at the option of the subject or his counsel, or the State, or by the court on its own motion, upon the preliminary evaluation by Patuxent that the subject is a defective

---

**10.** It appears that the statutes under consideration in *Baxstrom*, *Humphrey* and *Jackson* were not so comparable to art. 31B and art. 59 and its associated regulations as to make these cases dispositive of the issues in the instant case. Moreover, when faced directly with the issue presented here, the Supreme Court specifically reserved judgment. *Murel*, at 357–358. Thus, we make our decisions without the benefit of a direct holding, albeit with some general guidance, from the Supreme Court.

delinquent. As *Dower* recognizes, 396 F. Supp., at 1084-1085, art. 59, § 15 provides a judicial proceeding to determine whether a person involuntarily committed to a mental hygiene facility has a mental disorder and, if so, whether the disorder is of such a nature that for the protection of himself or others, he needs in-patient care or treatment. The committed person may request a jury. The hearing proceeds as in a civil action at law. Appeals may be taken as in "any other equity cases." At the judicial stage of the proceedings, under both art. 31B and art. 59, the test for the sufficiency of the evidence is a preponderance thereof. We do not agree with the suggestion in *Dower*, at 1090, that the standard being the same at the judicial stage in each proceeding "is of little or no initial import." We believe it supports the conclusion that the difference at the pre-judicial stage is not enough to offend the equal protection clause.

We said in *Bush*, 22 Md. App., at 364:

> "We cannot conceive of a court's holding that an administrative regulation, requiring a standard of proof different from that required by the courts in similar cases, is tantamount to a denial by the State of equal protection of law where the court standard complies with constitutional minimum standards. If such were the case, then, hypothetically, a State agency, authorized to adopt rules and regulations, could determine that in all hearings before it the standard of proof required to establish guilt would be more than 'beyond a reasonable doubt', *i.e.*, proof of 'guilt to a mathematical certainty'. It would follow that the State in all criminal cases would be required to scrap the present standard of proof beyond a reasonable doubt and to substitute therefor proof of guilt to a mathematical certainty. Otherwise, the State would subject itself to attack on the theory of denial of equal protection."

The Court in *Dower*, 396 F. Supp., at 1089-1090, declared: "Herein, it is not necessary to determine all of the issues

present in the hypothetical case posed by Judge Gilbert. Herein, this Court simply notes that it is initially up to the legislature of the State of Maryland to determine the extent to which it, the legislature, delegates rule-making power to any administrative agency." We do not deem it to have been the legislative intent in authorizing the Secretary of Health and Mental Hygiene to make rules and regulations for the administration and enforcement of the Mental Hygiene article and for the operation and administration of the Department of Health and Mental Hygiene, that the Secretary, in exercise of such authority, could set the standard of proof in judicial proceedings, including those related to matters completely independent of his responsibilities, duties, and jurisdiction. "In construing statutes, results that are unreasonable or inconsistent with common sense should be avoided, whenever possible." *Height v. State*, 225 Md. 251, 259 (1961), citing *Maguire v. State*, 192 Md. 615 (1949).

In summary, we hold that, in this jurisdiction, the preponderance of the evidence standard applies in defective delinquency cases, that its application does not violate the equal protection clause of the federal constitution, and that the decision of the United States District Court for the District of Maryland in *Dower v. Director, supra,* not binding upon us, does not persuade us to the contrary.

## THE APPEALS *SUB JUDICE*

In this opinion we dispose of four appeals, each docketed in the September Term, 1975: Ronald Davis v. Director, No. 478; Rupert Leroy Powell v. Director, No. 597; Robert N. Shorter v. Director, No. 612; and Louis Cane v. Director, No. 862. Each of Davis, Powell, Shorter and Cane was convicted of a crime which subjected him to commitment as a defective delinquent. Each was referred to Patuxent Institution for examination as a possible defective delinquent. Each was pronounced a defective delinquent upon diagnostic evaluation. Each was determined to be a defective delinquent by a jury upon a judicial hearing.

718

Thereupon, each was, by court order, committed to Patuxent Institution for an indeterminate term as a defective delinquent. Each sought leave to appeal from the order so committing him. We granted the application as to each, and ordered the case transferred to our regular appeal docket. Code, art. 31B, § 11. Each case was duly briefed and argued before us.[11]

---

11. Davis pleaded guilty in the Circuit Court for Prince George's County on 19 December 1973 of assault with intent to maim. He was sentenced to 10 years on 21 January 1974 and referred to Patuxent for diagnostic evaluation. Patuxent declared him to be a defective delinquent in its report of 26 August 1974. A hearing before a jury on 6 February 1975 on the issue of defective delinquency resulted in a mistrial. At a rehearing on 5 and 6 June 1975 a jury found him to be a defective delinquent. By order the same date, he was committed to Patuxent. He made timely application for leave to appeal which we granted by our order of 10 July 1975, and the case was transferred to our regular appeal docket.

Powell was found guilty in the Circuit Court for Anne Arundel County on 3 July 1967 of armed robbery, sentenced to 10 years and referred to Patuxent for diagnostic evaluation. It was the opinion of the Patuxent staff that he was a defective delinquent. On 25 September 1968, upon a hearing without a jury, the court found that he was a defective delinquent and, the same date, ordered his commitment to Patuxent. There was no timely application for leave to appeal. An attempt made through post conviction procedures to obtain permission to file a belated application for leave to appeal was denied by the Circuit Court for Anne Arundel County on 20 March 1969, and we refused to grant application for leave to appeal from that denial. Powell v. Director, No. 19, September Term, 1969, filed 28 August 1969, unreported. A "Motion for the extra chromosome in defense of the super male criminal XYZ chromosome", filed in proper person, and treated as a petition for a writ of habeas corpus, was denied by the Circuit Court for Anne Arundel County on 18 November 1969. On 5 February 1974 Powell filed a petition for a redetermination of his defective delinquency status. He requested that the hearing thereon be held in the Criminal Court of Baltimore on the ground that Baltimore City was his bona fide residence when originally sentenced. Code, art. 31B, § 10 (a). Hearing in the Criminal Court of Baltimore was had on 1 July 1975, and a jury determined that he was a defective delinquent. By order the same date he was recommitted to Patuxent and filed timely application for leave to appeal therefrom. We granted the application by our order of 11 August 1975, and the case was transferred to our regular appeal docket. We note that in the record transmitted to us there are documents indicating that Rupert Leroy Powell pleaded guilty in the Circuit Court for Howard County on 5 May 1975 to assault with intent to maim, the plea was accepted, he was found guilty and was sentenced to 5 years from the date of his plea.

Shorter pleaded guilty in the Criminal Court of Baltimore on 29 August 1974 to armed robbery. On 24 September he was sentenced to 12 years and referred to Patuxent for diagnostic evaluation. According to the diagnostic report of Patuxent, dated 13 February 1975, he was a defective delinquent. At a hearing on 30 July 1975, a jury found that he was a defective delinquent and by order the same date he was committed to Patuxent. A

Davis, Powell, Shorter and Cane have a common contention. Each alleges that the order committing him to Patuxent must be reversed because at the hearing on the issue of his defective delinquency the jury were instructed that the applicable standard of proof was a preponderance of the evidence.[12]

timely application for leave to appeal from the order was granted by us on 15 August 1975, and the case was transferred to our regular appeal docket.

Cane pleaded guilty in the Circuit Court for Prince George's County on 23 May 1974 to armed robbery. On 27 June 1974 he was sentenced to 15 years as of 17 February 1974 and referred to Patuxent for diagnostic evaluation. By its report of 12 November 1974, Patuxent declared him to be a defective delinquent. Upon hearing on 21 July 1975 a jury found that he was a defective delinquent, and, by order of 22 July 1975, he was committed to Patuxent. On 14 October 1975 we granted his timely application for leave to appeal from the order, and the case was transferred to our regular appeal docket.

The four cases were consolidated for argument before us.

12. In the Davis hearing the court told the jury that "the burden of proof rests upon the State to satisfy you by a preponderance of the evidence that he is now a defective delinquent. . . ." The court explained fully the meaning of "preponderance of the evidence." The transcript does not reflect an objection to this charge.

We do not have the exact charge given to the jury in the Powell hearing because the parties on appeal, pursuant to our order of 3 October 1975, gave a statement of the case in lieu of pleadings and evidence in accordance with Maryland Rule 1026 e. It appears from that statement that prior to trial Powell requested the hearing judge to instruct the jury "that the burden of proof upon the State to prove defective delinquency was by clear and convincing evidence." The judge reserved his ruling. At the close of all the evidence, he declared that he would instruct the jury "that the State need prove defective delinquency only by a preponderance of the evidence." The instruction was so given and Powell excepted.

In the Shorter hearing, the judge told the jury that the State had the burden of proving that Shorter was a defective delinquent within the meaning of the statute. He pointed out: "That burden of proof differs from the burden of proof required in criminal cases. In a criminal case the State must prove guilt of the defendant beyond a reasonable doubt." He then delineated the standard applicable to the case before the jury: "However, in this case the burden is upon the State to establish by a fair preponderance of the evidence that Robert N. Shorter is a defective delinquent." He went on to explain in detail what the term "fair preponderance of the evidence meant." The transcript shows that at the conclusion of the charge the judge said: "Gentlemen, do you have any objections to the instructions. If you do, or if you do not, the case is now ready for argument, gentlemen." The transcript reflects no objections. On the morning of the hearing, however, Shorter filed a request in writing that the court instruct the jury that the State must meet its burden of proof "by *clear and convincing evidence*". The request is endorsed "Denied" over the signature of the judge and the date 30 July 1975.

In the Cane hearing, the judge charged the jury: "The burden of proof in this case, because it is a civil case, rests upon the State to satisfy you by a

It appears, as to Davis, that the point was not preserved for appellate review. In the context of jury instructions, there was no compliance with Maryland Rule 556. Compare Rule 756 g. In the frame of reference of Rule 1085, as the point was not tried and decided below, we ordinarily would not entertain it. *Musgrove v. State,* 1 Md. App. 540, 545 (1967), *cert. den.* 247 Md. 741 (1967). Of course, in the light of our holding that the preponderance of the evidence standard is prevailing in Maryland state courts, the point provides no basis for reversal of the orders by which each of Davis, Powell, Shorter and Cane, respectively, were committed to Patuxent as a defective delinquent in any event. We hold, in each appeal, that the hearing judge was not in error in his instruction to the jury with respect to the standard of proof. As Powell, Shorter and Cane present no other allegations of error, our holding is dispositive of the appeal as to each of them, and the orders which concern them are affirmed.

Davis advances two additional allegations of error. He contends that the hearing court erred when it refused to admit into evidence the report of the private psychiatrist it appointed to examine him at his request, and that the evidence was not sufficient to sustain the determination that he was a defective delinquent.

Code, art. 31B, § 7 (b) entitles a possible defective delinquent, upon request, to be examined by a practitioner of psychiatry of his own choice for the purpose of determining whether he is a defective delinquent. The statute provides that the report of examination made by such a psychiatrist shall be submitted in writing addressed to the court. We noted in *Lincoln v. Director,* 21 Md. App. 597, 602, n. 3 (1974):

> "The psychiatrist of the criminal's own choice, furnished him as provided by Art. 31B, § 7 (b), is

---

preponderance of the evidence that he is now a defective delinquent. . . ." At the conclusion of the charge, defense counsel excepted, asserting that under *Dower,* "the proper burden of proof is . . . clear and convincing proof, not just a preponderance of the evidence." The exception was overruled. *In so doing,* the judge said: "You can argue but I am not going to instruct. You can tell them."

not in the position of a medical expert in an adversary proceeding. He is considered to be 'independent', and is required to submit a written report of his examination and findings to the court for consideration by the trier of fact. 'The defendant has no control over the admission of the report of this independent psychiatrist and the physician-patient relationship does not apply.' *Savage v. Director*, 5 Md. App. 1, 2-3, quoting *Sas v. Maryland*, 334 F.2d 506, 511, citing *Simmons v. Director*, 227 Md. 661. The defendant has no right under the statute to withhold the psychiatrist's report from the court or to exclude it from evidence at the hearing, even when unfavorable to him. *McCubbin v. Director*, 17 Md. App. 351, 354."

It seems that Roger Clark Harris, licensed to practice medicine in Maryland and Virginia, and certified by the American Board of Psychiatry and Neurology, was appointed by court order to examine Davis. According to the testimony of Dr. Harris at the hearing "I went to the Patuxent Institution, I believe, in early January of 1975 where I did a complete psychiatric evaluation of Mr. Davis." [13] Dr. Harris was called to testify in behalf of Davis. Qualified as an expert witness in the field of psychiatry, he said he was familiar with the Maryland statutory criteria for defective delinquency. It was his opinion that Davis was not a defective delinquent. He explained in detail how he reached this opinion. Near the conclusion of his direct examination he was shown a document which he identified as "the write-up of the psychiatric evaluation which I did on Mr. Davis." The defense moved it into evidence and the State objected. The judge refused to admit it. It was his position that the witness was present, able to testify as to matters in the report, and subject to cross-examination. It is manifest

---

13. The docket entries in the *Davis* case do not reflect the issuance of the order and the record transmitted to us does not contain the order or the report made by Dr. Harris.

that Dr. Harris did testify fully with respect to his examination and evaluation of Davis. We see no abuse of discretion, in the circumstances, in the refusal to admit into evidence the report covering the same matters. That the "institutional base file", apparently containing a copy of the diagnostic staff report of Patuxent, and "institutional progress sheets" concerning Davis, were admitted in evidence does not compel a contrary view. Their admission was proper, *Wise v. Director*, 1 Md. App. 418, 423 (1967), and, in the circumstances, was not predicated in any way upon the admission of the report of the private psychiatrist. We note that, unlike the situation with respect to the private psychiatrist's report of his evaluation of Davis, the Patuxent staff report was signed by the Director of the Institute, a resident psychiatrist, a medical doctor and a psychologist, none of whom were present at the hearing. The staff report meets hearsay exceptions by past judicial fiat, well established.

As to the allegation that the evidence was not sufficient to sustain a determination of defective delinquency, Davis moved for a directed verdict at the close of the evidence offered by the State. Maryland Rule 552 a. Upon argument by counsel, the motion was denied. Davis thereupon offered evidence in his own behalf, and by so doing, withdrew his motion. Rule 552 b. The transcript of the proceedings does not show that the motion was renewed at the close of all the evidence and the docket entries do not reflect such motion made at that time. Thus, there is nothing before us to review on the question of withdrawing the case from the jury because of the insufficiency of the evidence. *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 488-489 (1969); *Smith v. Carr*, 189 Md. 338, 339-340 (1947).

In any event, we would not have found the hearing court to have been in error in refusing such a motion if it were properly before us as the evidence was legally sufficient for the case to go to the jury. Davis urges that the only evidence upon which to find that he was a defective delinquent came from a Patuxent staff psychologist, Allen William Strange. Davis overlooks the institutional base file and the in-

stitutional progress sheets which were before the jury. The diagnostic staff report, which was in compliance with art. 31B, § 7, gave as the opinion of the staff that Davis "amply meets all the criteria for being a Defective Delinquent. . . ." The Institution's Director asserted flatly in a letter submitting the report to the court: "It is the opinion of the staff of this Institution that Ronald Davis is a Defective Delinquent and should be committed to the Patuxent Institution in accordance with Article 31B." Davis is unhappy because the staff report, in stating that he was a defective delinquent, added "in that he has shown persistent aggravated antisocial criminal behavior, is a danger to society. . . ." Davis complains that the reasons advanced for the determination did not state that he was found "to have either such intellectual deficiency or emotional unbalance, or both as to clearly demonstrate an actual damage to society. . . ." See Code, art. 31B, § 5. The report, however, contained this evaluation of Davis as revealed by psychological examination:

> "The patient is presently functioning in the Average range of intelligence, having achieved a Full Scale I.Q. of 103 on the WAIS. The projective data indicates that he is a highly insecure, infantile, and unstable individual who seeks for immediate gratification of his needs and who has not learned to tolerate frustrations. He is frightened, sexually confused, and inadequate, and therefore he must bear a facade of a tough guy. As he is sexually confused, he tries to prove his masculinity. In so doing, he tends to become aggressive particularly toward females. When he acts-out his aggression, he thinks of nothing but gratification of his needs and impulses."

Psychiatric examination, according to the report, showed: "His insight appeared to be very poor and his judgment grossly impaired. His emotional reactions were appropriate to his thought content." The staff psychologist, Strange, who

testified at the hearing, stated that it was the conclusion of the staff that Davis met the definition of defective delinquent and that his commitment to Patuxent Institution should be recommended to the court. He further testified that he, himself, had evaluated Davis by way of clinical interview and the administration of psychological tests. As a result of this evaluation, he thought that Davis met the definition of defective delinquency "by reason of his past behavior and the emotional disturbance suggested on the psychological tests. I do not believe that he has any intellectual deficiency, but I believe that his past behavior and emotional disturbance indicated by the psychologicals, in my opinion, do make him a danger to society." The evidence was legally sufficient in law to submit the issue of defective delinquency to the jury.

Davis appears to complain because the diagnostic staff report was dated 4 June 1974, submitted to the court by a covering letter from the Director dated 22 August 1974 and filed four days later. It seems he thinks there should have been an evaluation of him more timely to his hearing on 6 June 1975. In any event, the point was fairly put to the jury. The court charged that the burden was on the State to satisfy the jury that Davis "is *now* a defective delinquent." (emphasis supplied). Dr. Theodore Alexander Tasony, a Patuxent staff psychiatrist testified on behalf of Davis that there had not been a staff evaluation of Davis since that held in June 1974. He said that "in this age" it was possible "that Davis's condition could have changed since the last evaluation" and indicated that a more recent evaluation "would have been beneficial." [14] The freshness of the evaluation went to the weight of the evidence, a matter for the jury, and not to its admissibility. As we have indicated,

---

14. Dr. Tasony's statement that an evaluation subsequent to that of June 1974 would have been "beneficial" was made in this context:

"Q. Do you believe that such an evaluation should have been made?
A. It would have been beneficial.
Q. It should have been made, you say?
A. I think it would have been beneficial."

the evidence adduced was legally sufficient to submit the case to the jury.

> *As to Ronald Davis, Appeal No. 478, September Term, 1975: order of 6 June 1975 of the Circuit Court for Prince George's County affirmed.*
>
> *As to Rupert Leroy Powell, Appeal No. 597, September Term, 1975: order of 1 July 1975 of the Criminal Court of Baltimore affirmed.*
>
> *As to Robert N. Shorter, Appeal No. 612, September Term, 1975: order of 30 July 1975 of the Criminal Court of Baltimore affirmed.*
>
> *As to Louis Cane, Appeal No. 862, September Term, 1975: order of 22 August 1975 of the Circuit Court for Prince George's County affirmed.*