## PURKS *v.* STATE

[No. 309, September Term, 1960.]

*Decided June 27, 1961.*

The cause was argued before BRUNE, C. J., and HAM-
MOND, PRESCOTT, HORNEY and SYBERT, JJ.

*L. Robert Evans,* for appellant.

*Joseph S. Kaufman, Deputy Attorney General,* with whom
were *Thomas B. Finan, Attorney General, Saul A. Harris*
and *Abraham L. Adler, State's Attorney* and *Assistant State's
Attorney,* respectively, for Baltimore City, on the brief, for
appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from the order of the Criminal Court of
Baltimore under which Francis Aubrey Purks (the appel-
lant) was committed to the Patuxent Institution, pursuant
to the provisions of Code (1957), Art. 31B, § 9 (b), for an
indeterminate period without either maximum or minimum
limits.

The appellant was convicted of robbery and sentenced to
the Maryland Penitentiary for a term of eight years. At the
same time, the trial court directed that he be examined at
Patuxent. In due course he was examined, and, it having
been determined that he was a defective delinquent, that find-
ing was reported to the court. Thereafter, at a hearing on the
issue of whether or not the appellant was in fact a defective
delinquent, a jury found that he was and the court ordered
that he be returned to the institution for confinement as a de-
fective delinquent.

At the hearing in the trial court, after he had been quali-
fied as an expert witness and had testified as to his interview
with the appellant and to the range of testings that had been
made at the time, a psychologist, Kenneth J. Hallam (the
psychologist), was permitted to read the whole of a copy of
his original report—which had been made in the regular
course of his duties at the institution and had become a part
of the permanent records of the institution—in reply to a
question as to the results of such tests. The appellant ob-

jected on the ground that the report was hearsay. The witness, in turn, was meticulously cross-examined as to the testings that had been made.

Essentially the same procedure was followed when Dr. Harold M. Boslow, a psychiatrist and the director of Patuxent (the director), was called to testify. After he had been qualified, he testified generally as to the information that had been collected about the appellant, including his previous and present offenses and his medical, military and marital history, before he was asked to state the result of the staff interview with the appellant. Over an objection that the report was hearsay in that it was based in part on the statements of persons who would not be available for cross-examination and on records which could not be presently examined, the court permitted the director to read from the report the impressions and conclusions the staff psychiatrists and psychologists (including the director) had reached as a result of their examination of the appellant at a conference held for that purpose. The director further testified as to the work and behavior of the appellant at the institution and concluded his testimony by stating, as did the signed report, that the examination of the appellant demonstrated persistent aggravated anti-social behavior and evidenced a propensity toward criminal activity; and that, although he was not intellectually deficient, the appellant was found to have such emotional unbalance as to make him an actual danger to society so as to require confinement and treatment. A subsequent report of a staff medical physician, made under the supervision of the director, was not admitted as evidence because it had not been signed by the physician. The director, as was the psychologist, was extensively cross-examined.

From the order of commitment, the appellant filed a petition for leave to appeal pursuant to the provisions of § 11A.[1] This Court, in *Purks v. Warden,* 224 Md. 643, 166 A. 2d 917 (1961), granted the application for leave to appeal but limited the scope thereof to "the question of the admissibility of the reports objected to."

1. See Code (1960 Cum. Supp.), Art. 31B, §§ 11, 11A.

On this appeal it is contended that the trial court committed reversible error in allowing the director of the institution and the psychologist to read into the evidence over objection the reports that had been prepared as a result of the examinations of and interviews with the appellant. And, contrary to the limitation imposed on what we would consider on the appeal, it is further contended that the court erred in certain of its rulings with respect to the cross-examination of the director.

The admission of the reports as evidence was not improper. It is true, of course, that this proceeding began with the filing of the report prepared by the director of the institution, in which report the appellant was charged with being a defective delinquent, but it is now settled—even though the report is comparable to an indictment or information—that a proceeding under Article 31B of the Code of 1957 is civil in nature both as to its substantive and procedural aspects. *Blizzard v. State,* 218 Md. 384, 147 A. 2d 227 (1958). Thus, while the burden of persuasion is on the State, a fair preponderance of evidence—and not proof beyond a reasonable doubt—is all that is required to sustain a finding of defective delinquency.

Section 7 (a), in addition to requiring that a medical physician, a psychiatrist and a psychologist shall examine a defendant for possible defective delinquency after having assembled all "pertinent information about the person to be examined," specifically provides that the examiners "[o]n the basis of all the assembled information, plus their own personal examination and study" of the person being examined, shall determine whether in their opinion such person is or is not a defective delinquent and report their findings in writing to the court. Section 8 (a) provides that if the consensus of the examiners is that the person examined is a defective delinquent, the court shall, among other things, summon the defendant before it for a hearing and may in its discretion summon "other witnesses and secure further evidence."

While not specifically stating that a report is admissible as evidence, we think it is apparent that the Legislature—by authorizing a court to secure *further* evidence than that con-

tained in the report—strongly implied that the report could be used as evidence. Besides we see no reason why the report of the institution as well as those of the individual members of the staff—containing the expert findings and conclusions of the staff medical physicians, psychiatrists and psychologists —should not have been admitted as evidence in the setting in which such reports were offered in this case. Even though it is true, as the appellant asserts, that the admitted reports were based in part on hearsay evidence, it appears that the inclusion of such information therein, if not expressly directed, was at least permissive. Moreover, there was no constitutional impediment to the power of the Legislature "to change the common law rules of evidence as to what documents are admissible and the weight to be attributed to them." *Jones v. State,* 205 Md. 528, 533, 109 A. 2d 732 (1954).

Recently, in *Palmer v. State,* 215 Md. 142, 137 A. 2d 119 (1957), we had occasion to comment on the extremely important role of the report of the institution in the trial of cases involving an issue of defective delinquency by saying (at p. 152) that the "expert findings and conclusions [of the three examiners] are to be accorded very serious consideration, particularly in a case such as this one, when the trial court almost necessarily must rely to a considerable degree on the opinions of expert witnesses." See also *Watts v. State,* 223 Md. 268, 164 A. 2d 334 (1960), where it was held that the admission of an opinion of a psychiatrist based on her own examination and analysis of the personality of a mental patient was not reversible error even though the psychiatrist had relied to some extent on the objective data (as distinguished from the conclusion) recorded on a chart by a psychologist who had also studied the patient. There is, however, no case in this State bearing directly on the question with which we are presently concerned.

With one exception, the courts in other jurisdictions, having a statute regulating the incarceration of an habitual sex offender, seem not to have had an occasion to pass upon the question either. But the case of *In Re Mundy,* 85 A. 2d 371 (N. H. 1952), is in point. In New Hampshire, where the

statute (requiring commitment of a sexual psychopath to a mental institution) specifically provides that the report of the examining psychiatrists shall be admitted as evidence, the defendants attacked the introduction of the report on the ground that it was hearsay. There the Supreme Court of that State said (at p. 372):

> "The defendants' main objection here is that the court, under * * * [the statute] which permits it to do so, received hearsay evidence in the form of the report of the examining board. This in turn was based to some extent upon probation and police reports which under [the statute] the board was authorized to examine for the purpose of obtaining information from them. * * * This report consisted of (1) findings based on hearsay from different sources, and (2) the conclusions drawn from them and from personal examinations of the defendants made by the board that the defendants were sexual psychopaths. * * * The psychiatrist who testified at the hearing before the court was a member of the board and he was cross-examined at will by the defendants, who were present at the hearing, through their counsel."

Following a discussion of several statutory exceptions to the hearsay rule, the Court went on to say (at p. 373):

> "It is apparent from the above that the Legislature and even the courts may make valid exceptions to the hearsay rule.
>
> "That the Legislature has done so here seems to us too clear to require extended consideration. The whole purpose of· this statute was to provide new and more effective methods for disposing of these cases and a step toward this end was to admit hearsay evidence in the form of the report of the examining board."

And the Court in summary said (at p. 375):

> "To sum it up, the Legislature has said here that

the State may introduce hearsay evidence to aid in establishing prima facie that such defendants as these are suffering from an illness which makes them dangerous to themselves and others. But these defendants may then test this by cross-examination as unlimited as in a criminal case and in addition they may compel the State to produce at its own expense for such cross-examination, not only the persons upon whose testimony, hearsay and otherwise, the board's finding of the defendant's illness depends, but any other witness whose evidence they think may aid them."

The statute in this State is also replete with provisions designed to protect the rights of a defendant and to assure him of a fair hearing. Section 7 (b) provides that when he requests it, a defendant shall be entitled to be examined by a psychiatrist of his own choice at State expense. Section 8 (a), besides providing that he shall be represented by counsel of his own choice, or, if no choice is made, by competent counsel appointed by the court, further provides that a defendant shall be furnished with a copy of the report and given full opportunity to summon witnesses and present evidence, which includes, of course, not only the right to cross-examine adverse witnesses, but also the right to take the depositions of witnesses (out-of-state and resident) and to have discovery of documents pursuant to Maryland Rule 400, *et seq.* Besides all of this, section 8 (c) provides that counsel for the defendant "shall have access to all records, reports and papers of the institution relating to the defendant, and to all papers in the possession of the court bearing upon the defendant's case."

The defendant in this case did not request the services of a psychiatrist or summon any witnesses to testify in his behalf. Nor did he make any use of the deposition and discovery rules to obtain evidence. But he was represented by competent court-appointed counsel who fully cross-examined the expert witnesses who had prepared the reports objected to. We hold therefore, since there is nothing in the record to in-

50

dicate the contrary, that the appellant was not prejudiced by the admission of such reports as evidence. With this holding we do not reach the question of whether the same rule would apply if the expert witnesses had not been subject to direct and cross examination at the hearing. Nor is it necessary to decide in this instance whether the reports were admissible under Code (1957), Art. 35, § 59, as records made in the regular course of business. We leave these questions open.

The contention that the court erred in rulings with respect to the cross-examination of the director involved two matters. One was aimed at ascertaining what treatment at Patuxent would make is reasonably safe for society to terminate confinement and treatment of the appellant. The other was designed (in an effort to show bias) to ascertain the number of cases in which the director had given testimony that the defendant was a defective delinquent. Neither question is properly before us on this appeal. But it is obvious that both were subject to objection because they were not relevant to the issue of whether the defendant in this case was a defective delinquent.

The order of the lower court will be affirmed.

*Order affirmed.*