## HARRY EDWARD RIGGLEMAN, SR. *v.* STATE OF MARYLAND

[No. 1284, September Term, 1975.]

*Decided October 19, 1976.*

The cause was argued before MENCHINE, LOWE and MELVIN, JJ.

*Leslie J. Clark, Assigned Public Defender,* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Lawrence V. Kelly, State's Attorney for Allegany County,* and *Robert W. Hamilton, Assistant State's Attorney for Allegany County,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

On November 14, 1975, the appellant, Harry Edward Riggleman, Sr., was brought to trial before a jury in the Circuit Court for Allegany County on a two-count criminal information charging him with larceny of two automobiles. He was found guilty on each count and received a three year sentence on each count, to be served consecutively. He seeks reversal of the judgments of conviction on three grounds. Because we shall reverse the judgments of conviction and remand the case for a new trial we need only consider two: 1) the sufficiency of the evidence, and 2) the propriety of the court's action in striking appellant's insanity plea.

### Sufficiency of the Evidence

The evidence was clearly sufficient to support the convictions. Appellant's statements to a State Trooper that he did indeed steal the automobiles were received in evidence without objection. There was ample corroboration of the *corpus delicti.*

### The Plea of Insanity

The criminal information was filed on June 26, 1975. When appellant was arraigned on July 2, 1975, he filed as his only plea the following written "Plea of Insanity":

"For pleas to the informations [sic] in the above

cases [sic], the defendant, Harry E. Riggleman, pursuant to Article 59, *Section 23* of the Annotated Code of Maryland, alleges that he was insane *at the time of the commission of the alleged crimes"*. (Emphasis added.)

On the same date, July 2, 1975, the court signed an order (obviously submitted by appellant's counsel) committing appellant "to Springfield State Hospital . . . for the purpose of undergoing a complete psychiatric examination and evaluation by the medical staff of said hospital". It was further ordered "that a complete psychiatric report will be prepared by said medical staff from the basis of said examination and evaluation *in accordance with the provisions of Article 59, Section 23 of the Annotated Code of Maryland."* (Emphasis added.)[1]

Under the judge's signature on the order appears this handwritten statement: "This man is a high security risk. Please take proper precautions to detain him". As the judge later remarked, " . . . [N]o such precautions were apparently taken".

On November 5, 1975, the State filed a "Motion for Appropriate Relief" asking the court to "dismiss the Insanity plea" or in the alternative to "grant that relief which the Court deems appropriate in the premises". The motion alleged the following:

"1. On June 5, 1975, HARRY EDWARD RIGGLEMAN, SR., hereinafter referred to as Defendant, was arrested and charged with two counts of larceny of motor vehicle. On or about June 26, 1975, following a preliminary hearing, an information charging said offenses was filed in this Honorable Court.

2. On July 2, 1975, the Defendant was arraigned

---

1. We observe that since "Section 23" of Code Article 59 has nothing whatever to do with responsibility for criminal conduct, but § 25 does, it is manifest that appellant's counsel failed to cite the correct section of the Code. Section 23 sets forth the procedure to be followed when a defendant is believed to be incompetent to stand trial, an issue not raised by the appellant in this case.

and entered pleas of insanity in these cases. On the same dates, the Court signed an order committing the Defendant to Springfield State Hospital for examination and report (the State Department of Health and Mental Hygiene having indicated the examination had to be conducted there). On *July 3, 1975,* the Defendant was transported to Springfield Hospital for psychiatric examination. On or about July 4, 1975, the Defendant escaped from the hospital. On August 16, 1975, the Defendant was returned to Springfield by a police officer. On August 18, 1975, the Defendant fled, having escaped for the second time. Due to the Defendant's having removed himself, no examination was conducted. On or about September 18, 1975, the Defendant was apprehended by Pennsylvania authorities and incarcerated in the Somerset County, Pennsylvania, Jail. The Defendant refused to waive extradition unless the State agreed to return him to Springfield State Hospital which the State declined to do, and was returned to this jurisdiction on October 14, 1975, following an extradition hearing in Pennsylvania.

3. The State has attempted, without success at this time, to arrange a psychiatric examination in Allegany County by a private psychiatrist who would be paid by the State.

4. At no time has the Defendant adduced any evidence which would provide a basis for an insanity plea. The State alleges the plea in this case is frivolous, being without any factual basis, and is pursued for the purpose of delay or further escape. This case has been scheduled for trial in this Honorable Court on November 14, 1975.

WHEREFORE, your Petitioner prays the Court to conduct a hearing and grant the appropriate relief requested."

On November 5, 1975, a copy of the motion was served on appellant at the Allegany County jail and a copy mailed to

his counsel. A hearing on the motion was held two days later on November 7. At the hearing, the State's Attorney recited to the court the allegations in the motion and announced that appellant's counsel had "indicated that . . . the Defendant agrees . . . to the chronology when he was taken to Springfield, when he left, when he returned and when he left again. The other matters that we allege . . . are matters of record with regard to the placing of the charges". He concluded his opening remarks by saying, "I have no particular evidence that we would adduce at this time. We do have law that we would like to bring to the Court's attention". At this point, appellant's counsel said to the court:

"MR. SCHINDLER: If Your Honor please, the Defendant is still claiming and wants to maintain his plea of not guilty by reason of insanity. And my information from the Defendant at this time is that Dr. Franklin was supposed to have examined him yesterday. The date for the examination has been postponed until Monday.

BY THE COURT: Doctor who?

MR. SCHINDLER: Franklin. I would like to request Your Honor's permission . . . . I feel that I ought to have the Defendant on the witness stand and ask him some questions as to why he wants to maintain his plea of insanity and so forth. The Defense feels, counsel feels that we should be accorded the right to have the Defendant take the witness stand and answer various questions.

BY THE COURT: All right."

In his testimony, appellant denied the allegation that he "refused to waive extradition unless the State agreed to return him to Springfield", saying that he only "told them I would not come back to Maryland". He also testified that he had an appointment with Dr. Franklin on November 10; that Dr. Franklin, who he said was "an ear, nose and throat specialist", had told him that he had "an abcess down under the ear drum, the inner ear drum, that puts pressure on the

brain" and that was why he filed his plea of insanity; that he had "been in the hospital for blacking out spells"; that he has had nine "blackout spells" since 1974; and that he escaped from Springfield because he "was more or less afraid that they would go cutting on me down there".

It appears that when appellant was returned to Maryland on October 14, 1975, following his second escape on August 18, 1975, he was not returned to Springfield State Hospital, but to the Allegany County jail. There is nothing in the record authorizing his transfer from the hospital to the jail. Presumably the State did not wish him to return to Springfield for fear he might again escape. The court asked the State's Attorney, "Would it be feasible or possible to have the Defendant examined by a local psychiatrist in custody here, Mr. Kelly?" Mr. Kelly (the State's Attorney for Allegany County) answered:

"I might say with regard to that, Your Honor, that the State has been working for approximately two months, not generally with Mr. Riggleman's case, although this points out dramatically the failure in our whole — in the structure of things. That is, committing people to Springfield. We've had I believe this year five individuals committed, of which four have escaped, Mr. Riggleman being one. I have attempted to do that. At this point we have no psychiatrists that will agree to that. I'm hopeful that in the future, the immediate future hopefully, that we will be in such position.

But, frankly, Your Honor, we would in Mr. Riggleman's case rely simply on the fact that his case has been handled as cases since the beginning of time in Allegany County. And, frankly, while we're willing to change the system generally, I'm not particularly willing to change the system to meet Mr. Riggleman's particular situation. And we would rely on the state of the case as it presently is. Although, frankly, we hope in a month or so to be in a position where we can conduct our own mental

examinations here in Allegany County rather than to rely on the Department of Health and Mental Hygiene. But at this time that simply isn't true, Your Honor."

At the conclusion of the hearing, the hearing judge granted the motion to strike, giving as his reasons: 1) The "only purpose of [appellant's] seeking confinement at Springfield is for the purpose of evading and avoiding the trial on the merits, and that the Defendant doesn't sincerely and genuinely seek any psychiatric examination and evaluation to determine his mental condition"; 2) ". . . [T]he statement that he's been seeing an ear, nose and throat specialist who says he has some kind of difficulty with his inner ear would not be evidence on which any plea of insanity could be accepted. It has to be by psychiatric evaluation"; and 3) "I think the Defendant is merely attempting to evade and avoid trial on the merits".

The appellant was then re-arraigned. He was asked by the clerk, "What is your plea guilty or not guilty?" He answered, "Not guilty" and elected a jury trial.

Before determining the correctness of striking the appellant's insanity plea, it should be helpful to briefly review the nature of an insanity plea and the procedures to be followed when such a plea is filed.

Md. Rule 720 provides that an accused "*may* plead . . . not guilty by reason of insanity as provided by statute . . . ." The subsequent adoption of Md. Code Art. 59, § 25 (b) (formerly § 9 (b)) designates the plea as to insanity as a "plea in writing in addition to the plea or pleas otherwise required or permitted by law, *alleging that the defendant was insane at the time of the commission of the alleged crime*" and requires that such a plea be filed "*[w]hen it is desired* to interpose the defense of insanity".[2] The court may not refuse to accept the plea, and once filed, may not strike it out — any more than the court could strike out a not guilty plea. Indeed, once an insanity plea is filed, both trial

2. Thus there is no longer a plea of "not guilty by reason of insanity". Sweeney v. State, 6 Md. App. 431, 439, note 7.

counsel and the court have a responsibility to see that it is not improvidently withdrawn, even at the request of an accused. See *Walker v. State,* 21 Md. App. 666 (1974) and *White v. State,* 17 Md. App. 58 (1973). As pointed out by this Court in *White v. State, supra,* at 61-62:

" . . . [A] plea of insanity is no more than the assertion of an affirmative defense. The defense is not any different in its basic nature than other affirmative defenses, such as self-defense or coercion . . . . Like any defense, the question of whether an insanity defense should be raised remains a matter of trial strategy to be determined by counsel after consultation with his client".

Article 59, § 25 (b) of the Code specifies how and when the defense of insanity is to be raised and the procedural consequences that follow:

" . . . The judge of the court in which such warrant, indictment or information is pending and in which such plea of insanity has been entered shall have full power and authority to order an examination of the mental condition of such person by the Department of Mental Hygiene, subject to the provisions of § 26 of this article. *At the trial* of any case where there has been theretofore filed a plea of insanity at the time of the commission of the crime, the court shall direct the jury to render a special verdict on the sanity of the defendant at the time of the alleged crime. No such verdict as to insanity of the defendant at the time of the alleged crime shall be directed or accepted unless a plea in writing alleging that the defendant was insane at the time of the commission of the alleged crime shall have been filed by the defendant or his counsel." (Emphasis added.)

In *Strawderman v. State,* 4 Md. App. 689, 697-698 (1968), we filled in the statutory gaps insofar as the correct procedure to be followed *at trial* is concerned. We pointed

out: 1) that a person is "presumed to have been responsible for criminal conduct and sane at the time of such conduct until, after the filing of a proper plea, there is adduced proof that he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as a result of mental disease or defect [3] . . . sufficient to raise a doubt as to his sanity as defined in the minds of reasonable men"; and 2) "when there has been offered proof of insanity so defined sufficient to overcome the initial presumption of sanity of the accused the State must prove sanity, as well as the other elements of the offense, charged beyond a reasonable doubt". The opinion by Judge Orth (later Chief Judge of this Court and now Associate Judge of the Court of Appeals) went on, at 698:

> "So when a plea has been filed in writing alleging that the accused was insane at the time of the commission of the alleged crime, the court should determine preliminarily whether the proof adduced in support thereof is sufficient to raise a doubt as to the sanity of the accused, as defined, in the minds of reasonable men. If it finds that it is not, the State has no further burden with respect thereto and, in a jury trial, the question is not submitted to the jury. If the court finds that the proof adduced was sufficient to surmount the threshold question of doubt as to the accused's responsibility, the State has the burden of convincing the trier of facts that the accused was sane, and, in a jury trial, evidence on the issue should then be introduced before the jury with proper instructions."

With this background, we turn to the propriety of the court's action in striking the insanity plea. The State's "Motion for Appropriate Relief" concluded with a prayer to the court "to conduct a hearing and grant the appropriate relief requested". At the hearing, the only "relief requested"

---

3. By Chapter 407, Acts of 1970, the phrase "mental disease or defect" was replaced with the phrase "mental disorder".

or even suggested was to strike the plea of insanity. We know of no law, rule, or procedure in this state that permits a court to strike a properly entered insanity plea.[4] With respect to such a plea, the most that a court can do is to rule preliminarily whether the issue of insanity raised by the plea should be considered by the trier of fact pursuant to the guidelines set forth in *Strawderman, supra.* Even when the court determines under those guidelines that the issue of insanity should not be submitted to the trier of fact, the plea is not stricken; rather, the issue of insanity is simply not submitted to the trier of fact and the trial proceeds as if no insanity plea had been filed.

In this appeal, however, the appellant does not argue the propriety, *vel non,* of the court's action in striking his plea of insanity. Nor does he argue here the procedural propriety of a *Strawderman* type hearing prior to trial on the merits. As we understand the appellant's argument concerning the court's action, it is two-fold. First, he contends that he presented enough evidence at the hearing to raise a reasonable doubt as to his sanity and thereby place the burden upon the State to prove at trial his sanity beyond a reasonable doubt. Second, he contends that the court erred in its implicit ruling that he had by escaping forfeited his right to a psychiatric examination at State expense.

Appellant's first contention is without merit and needs little discussion. Proof sufficient to raise a doubt in the minds of reasonable men as to an accused's sanity can only be adduced through competent medical evidence to the positive effect that the accused, as a result of mental disorder, lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. No such evidence was presented at the hearing. *See Millard v. State,* 8 Md. App. 419 (1970); *Greenleaf v. State,* 7 Md. App. 575 (1969); *Saul v. State,* 6 Md. App. 540 (1969).

Appellant's second contention has merit. We hold that on

4. At the hearing the State's Attorney told the judge that he had looked but found no "out of State authority" and "no Maryland authority on this exact point".

the evidence before him, the hearing judge was clearly erroneous in his implicit ruling that appellant had forfeited his right to a free psychiatric examination.[5] As the moving party, it was incumbent upon the State to present evidence to support such a ruling. The only evidence presented by the State was "the matters of record with regard to the placing of the charges" and the undisputed fact that appellant escaped from Springfield on two occasions.

It is true that when an accused files an insanity plea he is under a legal obligation to submit to an examination by the State's psychiatrist, *Bremer v. State,* 18 Md. App. 291 (1973), because as pointed out in *Bremer,* at 316, "where he has pleaded insanity as a defense and presented evidence to meet the threshold question, the maintenance of a 'fair state-individual balance' requires that the State be permitted to have him examined". In this case, however, there is no evidence that the appellant has ever refused to be examined by a psychiatrist. The thrust of the State's motion was not that the State had been unable to obtain evidence to combat any threshold evidence of insanity that appellant might produce at trial, but that he had, by escaping from Springfield State Hospital, failed to take advantage of the opportunity to obtain at State expense any "threshold evidence" at all and should therefore be deprived of the opportunity thenceforward from doing so. In other words, the appellant by escaping had forfeited his right to an examination at State expense and since, at the time of the hearing, he produced insufficient threshold evidence of insanity, his plea should be stricken.

There is no doubt that when appellant escaped from the place he had been sent for the sole purpose of obtaining evidence that might have supported his plea of insanity, he could not later complain that he had been denied the right to obtain such evidence if it is shown that because of the escape no examination could be conducted. Whether a forfeiture has occurred depends upon the facts and circumstances in

---

5. As an indigent defendant, appellant's right to a psychiatric examination at State expense is clearly established. Swanson v. State, 9 Md. App. 594; Bremer v. State, 18 Md. App. 291.

each case. The fact of the escapes is one important factor, but it is not determinative of the issue. Here, the appellant was returned from his second escape to the Allegany County Jail on October 14, 1975. At that time, the order committing him to Springfield Hospital for examination was still in effect. As already mentioned, there is nothing in the record authorizing his transfer from Springfield Hospital to the jail. Nor is there any record evidence that had he been returned to the hospital, an examination could not have been completed. No one from the hospital testified at the hearing and there is no evidence of what, if any, precautions the hospital took or could have taken to detain him as requested by the judge. Nor is there any evidence that the appellant has ever refused to be examined by a psychiatrist. The State's contention that the appellant's only reason for filing an insanity plea was so that he could be sent to Springfield and escape is unsupported by the evidence. There is no evidence that prior to his first brief visit there he was aware of the poor security. The appellant's reason for escaping ("I was more or less afraid that they would go cutting on me down there") may not appear to be a rational one. It would be a legal "Catch-22",[6] however, to hold that before a person is entitled to seek evidence of his insanity he must act rationally, or to hold that, because an indigent defendant who has filed an insanity plea acts irrationally, the State is relieved of its duty to provide him a psychiatric evaluation.

Here, in spite of appellant's escapes, we think more should have been done to see that the court order of July 2, 1975, requiring "a complete psychiatric examination and evaluation" was carried out. The State, knowing of the sieve-like security conditions that apparently prevailed at Springfield Hospital, could have petitioned the court to have

---

6. In the World War II novel *Catch-22* (Joseph Heller, Simon & Schuster 1961), the protagonist Yossarian was trying to have himself grounded from flying further bombing missions. He told the military psychiatrist that he was afraid that people were trying to kill him. The psychiatrist told Yossarian that his fears were rational and that if he didn't think the way he did he could be grounded. "Catch-22" was that anyone who wanted to be grounded was sane and had to keep flying and anyone who wanted to keep flying could be grounded because he was irrational. However, as soon as one asked to be grounded he demonstrated that he was sane and therefore had to keep flying.

appellant examined at a more secure State institution, such as Clifton T. Perkins Hospital. Also, we think that the hearing judge, upon being informed at the hearing that the appellant "is still claiming and wants to maintain his plea", could have and should have taken measures to see that an examination be conducted.

Furthermore, as already indicated, we hold that it was error for the hearing judge to strike the insanity plea. Striking the plea prevented the appellant from ever offering to the court, or at trial, any evidence of his insanity at the time of the commission of the crimes charged; for the statute provides that without such a plea, "[n]o . . . verdict as to insanity of the defendant at the time of the alleged crime shall be directed or accepted . . . ." We cannot speculate whether the appellant could have obtained any such evidence from a source other than that provided by the State. Under the circumstances, even an attempt to do so would have been futile, for, even if obtained, without the requisite plea the evidence would have been all but useless to him.

> *Judgments reversed; case remanded for new trial.*
> *Costs to be paid by Allegany County.*