LINWOOD DANIELS *v.* SUPERINTENDENT, CLIFTON
T. PERKINS STATE HOSPITAL

[No. 357, September Term, 1976.]

*Decided December 8, 1976.*

The cause was argued before Thompson, Powers and
Lowe, JJ.

*Robert C. Turner, Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *Arnold M. Zerwitz, Assistant Public Defender*, on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Stephen Tully, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

Lowe, J., delivered the opinion of the Court.

Appellant was confined in the Clifton Perkins State Hospital, pursuant to Md. Code, Art. 59, § 27, after he had been found not guilty of a homicide by reason of insanity. Approximately two years later he petitioned for release as permitted by that section.[1] Application for release under § 27 is "pursuant to the provisions of § 15 of this article." See also *Keiner v. Superintendent*, 240 Md. 608.

Section 15 allows any mental patient to petition the equity court for release.[2] It sets forth a unique procedure for

1. Md. Code, Art. 59, § 27 provides:

"A person who has been found not guilty of any crime by reason of insanity at the time of the commission of the act, in the discretion of the court, may be committed to the Department of Mental Hygiene for confinement in one of the facilities of the State for examination and evaluation to determine, by the standards applicable to civil admission proceedings under §§ 11 and 12 of this article, whether such person by reason of mental disorder would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others. Upon the basis of the report by the facility, and any other evidence before it, the court may in its discretion, direct that the person be confined in a facility designated by the Department for treatment. He shall at any time after three (3) months from the date of his confinement for examination and evaluation have the right to apply for his release pursuant to the provisions of § 15 of this article. Before a hearing on such application and petition shall be held the applicant shall present a copy of the application and petition to the State's attorney of Baltimore City or the county from which the defendant was committed. Upon a negative report by the facility, the court having jurisdiction shall order the person promptly released unless good cause for a contrary determination as to dangerousness is shown by the State's attorney."

2. Md. Code, Art. 59, § 15 provides:

"(a) *Petition to be filed; respondent.* — Any patient may, at any time, subject to the limitations specified in this section, file a petition in the equity court of the county in which he resides or

hearing the petition, attempting to provide abundant safeguards against wrongful commitment. The result is a bastard proceeding, for the petition is heard in equity but the patient has the right to a jury, and the trial procedure is as a civil action at law. Apparently, the legislature sought to provide a petitioner with the procedural safeguards of proceedings at law, the conscience of an equity court and the

---

resided at the time of his admission, or in which he is confined for the purpose of securing his release. Any person having a legitimate interest in the welfare of the patient may file the petition on his behalf. The Department shall be the respondent in any such case, unless the patient is a patient in a private facility or a Veterans' Administration hospital, in which case the private facility or the Veterans' Administration hospital shall be named as the respondent.

(b) *Form and contents of petition.* — The petition shall be in the form and contain data as may be designated by the Maryland Rules.

(c) *Trial by jury.* — The petitioner may request that his petition be heard by a jury, and thereafter, such trial shall proceed as in a civil action at law.

(d) *Issues to be determined; action by court upon jury decision.* — The issues to be determined are:

(1) Does the patient have any mental disorder; and

(2) Is the disorder of such a nature that for the protection of himself or others, the patient needs inpatient medical care or treatment.

If the jury or court sitting as a jury answers both questions affirmatively, the court shall remand the patient to the custody of the facility or Veterans' Administration hospital from which he petitioned for release. If either question is answered in the negative, the petitioner shall be released from the facility or Veterans' Administration hospital.

(e) *Appeals.* — Appeals may be taken from decisions on petitions as in any other equity cases and may be taken by the petitioner or the respondent.

(f) *Records of proceedings.* — Records of all such proceedings shall be made a permanent part of the patient record of each patient.

(g) *Affidavit required for subsequent petition within one year.* — Once a patient has had a determination on the merits of any one petition filed by him pursuant to this section, no subsequent petition prepared by or for him shall be heard by a court of equity within one year of such prior determination, unless, in addition to all other required data, the petition is accompanied by a valid affidavit showing improvement of the patient's mental condition subsequent to the trial. No such affidavit shall be valid if executed by a patient of a facility or Veterans' Administration hospital. When filed, the petition and affidavit shall be reviewed by the court, and if the affidavit shows an improvement in the patient's mental condition, the petition shall be heard as provided in this section. If no substantial improvement in such condition is shown, the petition shall be dismissed."

availability of a jury trial — historically sacred and constitutionally sanctified as the *deus ex machina* of justice and right.

Upon filing his petition for release in the Circuit Court of Baltimore City, appellant prayed, and received, a jury trial. When the "god machine" failed to release him, he appealed to us, complaining that the verdict resulted from the chancellor's having unconstitutionally assigned him the burden of proving his sanity. He asks one question only:

> "Is placing the burden of proof on the patient seeking release from a state mental hospital after having been found not guilty by reason of insanity a violation of the patients right to equal protection?"

Appellant's contention that he was denied equal protection is based upon two arguments. First, he complains that by regulation 10.04.03 of the Maryland State Department of Health and Mental Hygiene, civil involuntary committees are entitled to periodic administrative hearings at which the Department must affirmatively establish the petitioner's insanity "by clear and convincing evidence".[3] Presumably because appellant was compelled to carry the burden of proving sanity upon his petition under the judicial release statute, the only route available to him,[4] he contends that he was denied equal protection.

Although the legislature authorized the Department to provide a procedure to release civilly committed patients, that authority did not extend to the establishment of judicial procedures for release of committees under § 27. See Md. Code, Art. 59, § 18 (a). Relying in part on *Bush v. Director*, 22 Md. App. 353, we said in *Davis v. Director*, 29 Md. App. 705, 717:

> "We do not deem it to have been the legislative

---

3. Because appellant did not question the standard of proof instruction either below or here (*i.e.*, preponderance of the evidence), we assume that his complaint is simply that under the judicial release procedure (§ 15) *he* bears the burden of proof, while under the administrative procedure, the Department appears to carry it.

4. The administrative procedure is restricted to civil committees. *See* Par. .02A of Reg. 10.04.03.

intent in authorizing the Secretary of Health and Mental Hygiene to make rules and regulations for the administration and enforcement of the Mental Hygiene article and for the operation and administration of the Department of Health and Mental Hygiene, that the Secretary, in exercise of such authority, could set the standard of proof in judicial proceedings, including those related to matters completely independent of his responsibilities, duties, and jurisdiction."

Furthermore, the judicial release procedure set forth in § 15 should not be entwined or confused with the Department's administrative release procedure in Reg. 10.04.03. The burdens are different, the standards are different and certainly the tribunals are different. There is no constitutional requirement that procedural protection, from whatever source it may emanate, be reduced to the lowest common denominator. The Department's administrative procedure does not supplant a civil committee's application for judicial release. Rather, it provides an additional route to release, more as an administrative safeguard to the Department, than as a substitute for judicial release. The judicial release procedure remains available to civil, as well as criminal, patients,[5] and when invoked the same standards are applied, including the assigned burden of proof to both classifications of committees.

Since the judicial release procedure is available to all, it appears that appellant's real complaint is that he is denied equal protection because the additional administrative release procedure available to civil committees is not available to criminal committees. However, if that is the

---

5.

"Nothing in this Regulation shall be construed in derogation of the right of any patient or any person on his behalf at any time to apply for a writ of habeas corpus pursuant to Section 14 (a) of Article 59, or to file a petition for judicial release pursuant to Section 15 of Article 59, irrespective of any prior notice to or action taken by the Commissioner of Mental Hygiene." Par. .05 of Reg. 10.04.03.

crux of his claim, he has missed an important procedural step. Appellant has not applied for administrative release and been denied access to that procedure. Instead, he immediately sought judicial release under the statute. Perhaps more significantly, he did not argue in the circuit court that he was entitled to the administrative procedure. Having failed to do so, he cannot now protest what he perceives to be an unconstitutional dearth of an administrative remedy. Md. Rule 1085.

Even if appellant's contention that he was denied equal protection were properly before us, he assumes a proposition with which we would have to disagree: that the judicial procedure affords less protection than would the administrative procedure. Conceding that the procedures are not equal (*i.e.*, the same), the protections afforded judicially are no less than those afforded administratively. That concern went to its repose in the persuasive Fourth Circuit opinion of *Dower v. Boslow*, 539 F. 2d 969. The alleged unequal protection argued there was the variance in the standards of proof between the judicial release procedure for defective delinquents committed to Patuxent Institute pursuant to Md. Code, Art. 31B, § 5, and the same administrative procedure regulation protested here. Judge Craven, writing for the Court, said:

"We are unable to conclude that a person is afforded less protection by a *judicial procedure* which requires proof by a *preponderance of the evidence*, but which also grants the important right of *jury trial*, than he is given by an *administrative procedure* before a single *hearing officer*, even though the state is required there to prove the issue by *clear and convincing evidence*. We are inclined to think it may be greater.

Few lawyers, we think, would give up trial by jury in favor of a higher burden of proof before an administrative officer. The right to a jury may well more than counterbalance a difference in standard of proof. Indeed, in a similar context the Supreme Court held that failure to provide 'judicial review

before a jury' to persons committed at the expiration of his criminal sentence, where that right was afforded to those involuntarily committed outside the criminal context, denied equal protection." (footnote omitted). *Dower v. Boslow*, 539 F. 2d at 972.

This brings us to the second portion of appellant's equal protection claim. During oral argument he informed us that the "customary trial procedure" in nisi prius courts is to assign different burdens of proof to petitioners seeking judicial release under § 15, depending upon whether the petitioner was committed under a civil or criminal commitment procedure. If civilly committed, the Department is given the burden of proving insanity. Appellant contends that, by contrast, because he was a criminal committee, he was given the burden of proving sanity.

This argument is conjectural, not a matter of evidence in the record and surely not a proper subject of judicial notice. Even if appellant's information is correct, we would have to take judicial notice that the trial courts generally apply erroneous standards and further find that appellant was denied equal protection because the judge in his case did *not* err. The contradiction in that premise is apparent. We are concerned, therefore, only with whether the trial judge in this case properly assigned the burden of proof to appellant when he charged the jury that:

" . . . the burden of proving the issues to you rests with the Plaintiff.",

not with what other nisi prius judges may have done.

Unhesitatingly, we hold that the judge in this case was correct in assigning appellant the burden of proving his sanity. If appellant's general procedural postulate is correct, we assume the erring judges will mend their ways and place the burden upon the petitioner in hearings upon application for judicial release pursuant to § 15, whether the petitioner was committed civilly or criminally.

One guideline often followed in placing the risk of failure of proof is to put it upon the party who seeks to change the

present state of affairs or who contends that the more unusual event has occurred. McCormick, *Evidence*, (2d ed.) Ch. 36, § 337; but see 14 Vand.L.Rev. 807, 817-818. In most cases, however, the party who has the burden of pleading a fact or who has the affirmative of an issue will have the burden of producing evidence of the fact and of persuading the jury of its existence. See *Operations Research v. Davidson*, 241 Md. 550, 574; *Burgess v. Lloyd*, 7 Md. 178, 196-197. The pleadings, therefore, provide the common guide for apportioning the burden of proof. McCormick, *op. cit.*, § 337. This is so even though one has the burden of proving a negative fact as part of his cause of action. See *Burgess v. Lloyd*, *supra*, 7 Md. at 196. It is thus of no moment whether appellant's burden is viewed affirmatively, as having to prove that he is sane, or negatively, as having to prove that he is not insane.

In the absence of prior adjudication, sanity is presumed by law. See *McCloskey v. Director*, 245 Md. 497, 504; *Higgins v. Carleton and Scaggs*, 28 Md. 115, 141-142. That presumption is overcome when an accused pleading not guilty by reason of insanity produces sufficient evidence to raise a doubt as to his sanity in the mind of a reasonable man. *Strawderman v. State*, 4 Md. App. 689, 698. Having overcome the presumption of sanity in defense of his homicide case as a matter of public judicial record, appellant may no longer rely upon a presumption of sanity. *Cf. Salinger v. Superintendent*, 206 Md. 623, 631.[6] His present status, derived from his adjudication of insanity, is that he is not sane. To alter this state of affairs, appellant must act affirmatively by asserting his sanity under § 15, and follow with sufficient proof to overcome the inertia of the trier of

---

6. We note that the Court of Appeals, while falling short of so holding, did indicate that the burden was on petitioner in such cases:

"... [O]ne who has been found not guilty of the charge of crime, because of due determination of insanity in a Criminal Court, has the same status as one confined as insane by virtue of some other procedure established by law and *in order to obtain release, must satisfy a judge or jury of his sanity*, not only under the Spencer [v. State, 69 Md. 28] rule but under the tests generally applied as justifying confinement." (emphasis added). Salinger v. Superintendent, 206 Md. at 631.

facts. We hold that Judge Grady properly instructed the jury that appellant had the burden of "proving the issues. . . ."

We have scrutinized appellant's contentions from every angle, but fail to see that appellant has been denied equal protection because society is protected from him.

*Judgment affirmed.*

*Costs to be paid by appellant.*