RANDALL WILLIAMS *v.* SUPERINTENDENT, CLIFTON T. PERKINS HOSPITAL CENTER

[No. 62, September Term, 1979.]

*Per Curiam Order September 10, 1979.*

*Opinion Filed October 15, 1979.*

The cause was argued before GILBERT, C. J., and LOWE and WEANT, JJ.

*Bradford C. Peabody, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Judith K. Sykes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Randall M. Lutz, Assistant Attorney General,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court. LOWE, J., concurs and files a concurring opinion at page 599 *infra.*

The law in Maryland is a living thing. Its heart is the Constitution of the United States; its blood is the Common Law of England as well as English Statutes in effect on July 4, 1776; [1] its other vital organs consist of the Constitution of the State, the Declaration of Rights; its arteries are composed of statutes and case law, while its capillaries are local ordinances, rules, and regulations.

Just as cells of a living human body are replaced by new cells, so, too, is old law, old interpretation, or old Constitutional provision replaced by new. This appeal demonstrates that the law is constantly changing.

On September 11, 1979, immediately after oral argument in a series of four cases, of which this is but one,[2] we issued our *per curiam* order in the instant case, *Randall Williams v. Superintendent, Clifton T. Perkins Hospital Center,* reading as follows:

> "This cause having come on for argument before this Court, it is this 10th day of September, 1979, by the Court of Special Appeals of Maryland, ORDERED, that the Order of the Circuit Court of Baltimore City be, and the same is hereby reversed and remanded to that court for further proceedings

---

1. Maryland Constitution, Declaration of Rights, Art. V.

2. The other three cases are Tyrone Jolley v. Superintendent, Clifton T. Perkins Hosp. Center, No. 74, September Term, 1979, Levon Moore v. State of Maryland, No. 144, September Term, 1979, and Arthur Hubbard v. Superintendent, Clifton T. Perkins Hosp. Center, No. 178, September Term, 1979. The three cases were decided in *per curiam* opinions filed the same day as the opinion in the instant case.

for the reason that the standard of proof applicable to involuntary commitment in a mental hospital after a finding of not guilty by reason of insanity, shall be by clear and convincing evidence. The opinion of this cause shall be filed at a later date. Costs to be paid by Mayor and City Council of Baltimore. Mandate to issue forthwith." [3]

We now explain why we reversed the order of the Circuit Court for Baltimore City.

This appeal is concerned with the difference between the use of that standard of proof we title "a preponderance of the evidence" and that we term "clear and convincing evidence" as applied to Md. Ann. Code art. 59 (Mental Health).[4] Candor requires that we recognize that to a jury of laymen the distinction between the two standards may well be purely academic. There are, as Mr. Chief Justice Burger observed in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), "no directly relevant empirical studies" which enable us to fathom exactly how a juror evaluates the evidence in a particular case, nor how that evidence is measured against the applicable standard of proof as related to the juror by the trial judge. Nevertheless, the adoption of a "standard of proof is more than an empty semantic exercise." *Tippett v. Maryland,* 436 F.2d 1153, 1166 (4th Cir. 1971) (Sobeloff, J., concurring and dissenting), *cert. dismissed sub nom., Muriel v. Baltimore City Criminal Court [sic]*, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972); *Addington v. Texas, supra.* The standard or measure of proof as adopted by the courts "reflects the value society places on individual liberty." *Tippett v. Maryland, supra,* 436 F.2d at 1166.

---

**3.** The *per curiam* orders in the other cases are identical except for the names of the litigants and of the court whose order was reversed.

**4.** Laws 1979, ch. 701, effective July 1, 1979, substantially amended what was section 27. Former section 27 was repealed and new sections 27, 27A, 27B, and 27C were enacted. Those amendments, however, are procedural in nature and, if applicable, would not affect the outcome of the instant case. We note, however, that as of July 1, 1979, an appeal, in cases involving the initial sanity hearing under Art. 59, may no longer be taken to this Court as a matter of right. Redress of alleged wrongs by the circuit courts must be by way of an "application for leave to appeal." Md. Ann. Code art. 59, § 27B (J).

*Preponderance of the evidence* has been defined as evidence which when fairly considered makes the stronger impression, has the greater weight, and is more convincing as to its truth than "the evidence in opposition thereto." *Black's Law Dictionary* 1404 (3d ed. 1933). *See also Insurance Commissioner v. National Bureau,* 248 Md. 292, 305-06, 236 A.2d 282, 289 (1967) ( " '[T]he weight of the evidence ... inclines more heavily to establish the existence or non-existence of facts in respect to which it is offered, than evidence to the contrary. . . .' "); *Todd v. Weikle,* 36 Md. App. 663, 670, 376 A.2d 104, 108 (1977) ( "[T]he fact sought to be proved is more likely so than not so."); McCormick, *Handbook of the Law of Evidence,* § 339 at 793 (2d ed. 1972) ( "[E]vidence preponderates when it is more convincing to the trier of fact than the opposing evidence."); 32A *C.J.S. Evidence* § 1021 at 648 (1964) ("[E]vidence which is of greater weight, or more convincing, than that offered in opposition. . . .").

*Clear and convincing evidence* generally means "proof beyond a reasonable, *i.e.,* a well-founded, doubt, though, of course, the evidence may be conflicting, and absolute certainty is not required." *Black's Law Dictionary* 337 (3d ed. 1933). Thus, it appears that the "clear and convincing standard" as applied in some types of civil cases is nothing more or less than the criminal law standard of "proof beyond a reasonable doubt" clothed in civil law garb. There are, however, those jurisdictions that reject the belief that the two standards "beyond a reasonable doubt" and "clear and convincing" are one and the same. Indeed, some define "clear and convincing" as more than a preponderance but less than "beyond a reasonable doubt." Those so holding seem to have created a vague and uncertain standard, falling somewhere between a preponderance of evidence and beyond a reasonable doubt. It is no wonder that jurors, lawyers, and courts, when confronted with the application of clear and convincing proof *vis a vis,* one of the other two standards of proof, oft find themselves engaged in shoveling smoke.

Heretofore, the courts of this State have applied the preponderance of evidence test as the proper standard of

proof necessary to commit judicially a person to a mental facility involuntarily. *Davis v. Director, Patuxent Institution,* 29 Md. App. 705, 351 A.2d 905, *cert. denied,* 277 Md. 736, 739, 740, *cert. denied,* 429 U.S. 919 (1976); *Bush v. Director, Patuxent Institute,* 22 Md. App. 353, 324 A.2d 162, *cert. denied,* 272 Md. 745 (1974); *Dower v. Boslow,* 539 F.2d 969 (4th Cir. 1976), *rev'g* 396 F. Supp. 1070 (D.C. Md. 1975); *Dorsey v. Solomon,* 435 F. Supp. 725 (D.C. Md. 1977), *aff'd in part, rem. in part,* 604 F.2d 271 (25 Cr. L. 2451 (4th Cir. 1979)).[5]

*Bush* made clear that although in a proceeding before a hearing officer of the Maryland Department of Health and Mental Hygiene "clear and convincing evidence" was required by COMAR 10.21.01.03 G (6), the courts are not bound by that degree of proof. 22 Md. App. at 363-64. We pointed out in *Bush* that the Legislature prescribed that in a trial concerning the insanity of a person seeking release from a mental facility that the "trial shall proceed as in a civil action at law," Md. Ann. Code art. 59, § 15(c), and that "[a]ppeals may be taken from decisions or petitions as in any other equity cases. . . ." Md. Ann. Code art. 59, § 15(e). We reasoned that had the Legislature intended a higher standard of proof than that ordinarily applied in civil or equity cases, preponderance of the evidence, it would have so stated.

Following the unmistakable lead of the Court of Appeals and this Court, the trial judge in the case now before us applied the "preponderance standard" and held the appellant to be in need of in-patient medical care and treatment, and that appellant was unwilling to be admitted voluntarily to such a facility.

The primary issue in this appeal is the proper standard of proof to be applied to the initial court hearing on exceptions to a hearing officer's recommendations to the court, after evaluation by the hospital, following the successful use of a defense of insanity to a criminal charge.

---

5. *See also, e.g.,* Crews v. Director, 245 Md. 174, 225 A.2d 436 (1967); Director v. Daniels, 243 Md. 16, 221 A.2d 397, *cert. denied,* 385 U.S. 940 (1966); Dickerson v. Director, 235 Md. 668, 202 A.2d 765 (1964); Purks v. State, 226 Md. 43, 171 A.2d 726 (1961); Walker v. Director, 6 Md. App. 206, 250 A.2d 900 (1969).

## THE FACTS

The Criminal Court of Baltimore, in July 1978, found Williams to be not guilty of certain criminal conduct, by reason of insanity. Williams was committed by Judge Joseph H. H. Kaplan to the custody of the Maryland Department of Mental Health and Hygiene (Department) for the purpose of having that agency make a determination as to whether Williams had a mental disorder. Approximately two months later Williams filed a petition in the Circuit Court of Baltimore City [6] in which he alleged that he did not meet the statutory criteria for involuntary civil commitment. A hearing on the petition was held on October 16, 1978. At that time the hearing judge determined that the State had not met its burden of proof. The judge made no finding with respect to sanity but continued the case to October 18, 1978, when, over objection, another doctor was allowed to testify for the State. His testimony satisfied the hearing judge "by a preponderance of the evidence that [Williams] has a mental disorder" [7] and needed hospitalization for his own protection as well as the protection of others.

The appellant asseverates that the hearing court erred by using the wrong standard of proof. Appellant avers that the use of the preponderance of evidence test is no longer permissible and is, in fact, a denial of due process in the light of *Addington v. Texas, supra,* and *Addington,* appellant argues, has implicitly overruled the Maryland cases establishing the preponderance test. The standard the hearing courts should have required, appellant urges, is that of the "clear and convincing evidence," citing *Addington v. Texas, supra.*

The State, on the other hand, sees a difference between the *Addington* facts and those now before us, and it suggests that

6. Under the former code, the procedure for release from the hospital was governed by Md. Ann. Code art. 59, §§ 27 and 15. By Laws 1979, ch. 701, § 1, former section 27 was repealed and reenacted. Section 15 is no longer applicable to the *initial* judicial hearing when, as here, the defense of not guilty by reason of insanity has been successfully employed.

7. "Mental Disorder means mental illness or any form of behavioral or emotional illness resulting from any psychiatric or neurological disorder. The term shall not include mental retardation." Md. Ann. Code art. 59, § 3(f).

because the appellant has been found "not guilty by reason of insanity" he was implicitly found to be "suffering from a mental disorder, and ... the finding that ... [appellant] committed a crime ... [established that appellant is] a danger to ... [himself] or to the safety of the person or property of others."

The State reasons that "[w]hile a NGRI [not guilty by reason of insanity] verdict may not provide, *ipso facto,* clear and convincing evidence that an insanity acquittee is mentally disordered, it creates, at least, a presumption of mental disorder. *Daniels v. Superintendent,* [*Clifton T. Perkins Hospital*], 34 Md. App. 173, 180, [366 A.2d 1064, 1069] (1976). The existence of this presumption is, by itself, enough to place the burden of proving insanity [*sic*] upon the insanity acquittee."

This Court, in *Daniels v. Superintendent, Clifton T. Perkins Hospital, supra,* said:

"In the absence of prior adjudication, sanity is presumed by law. See *McCloskey v. Director,* 245 Md. 497, 504, [226 A.2d 534, 539, *cert. denied,* 388 U.S. 920 (1967)]; *Higgins v. Carleton and Scaggs,* 28 Md. 115, 141-142, [92 A.D. 666, 676-77 (1868)]. That presumption is overcome when an accused pleading not guilty by reason of insanity produces sufficient evidence to raise a doubt as to his sanity in the mind of a reasonable man. *Strawderman v. State,* 4 Md. App. 689, 698, [244 A.2d 888, 893 (1968), *cert. denied,* 252 Md. 733 (1969)]. *Having overcome the presumption of sanity in defense of his homicide case as a matter of public judicial record, appellant may no longer rely upon a presumption of sanity. Cf. Salinger v. Superintendent,* 206 Md. 623, 631, [112 A.2d 907, 910 (1955)]. His present status, derived from his adjudication of insanity, is that he is not sane. To alter this state of affairs, appellant must act affirmatively by asserting his sanity under § 15, and follow with sufficient proof to overcome the inertia of the trier of facts. We hold that Judge Grady

properly instructed the jury that appellant had the burden of 'proving the issues. . . .' " 34 Md. App. at 180, 366 A.2d at 1069. (Emphasis supplied.) (Footnote omitted.)

*Addington,* which had not been decided at the time of *Daniels,* casts an ominous cloud over the italicized portion of *Daniels.* Patently, the referral, by a trial court of a person who has been found not guilty by reason of insanity to a mental facility, is involuntary, unless it can be successfully argued that a voluntary plea of not guilty by reason of insanity removes the element of involuntariness from the trial court's referral to a mental facility. To accomplish that we would have to hold that whenever a plea of not guilty by reason of insanity is successfully invoked, subsequent commitment to a mental hospital is *ipso facto* voluntary. One difficulty with that approach is that if, in fact, and the verdict of the criminal trial would so indicate, the accused was insane, there is an area of doubt that his plea was knowingly and intelligently made or that he, and not his counsel, made it. If the latter actually entered the plea, even over the protestation of his client, and the plea were successful, the accused would then be bound thereby in a subsequent sanity hearing.

A jury's verdict of "not guilty by reason of insanity" is in essence a negative verdict against the State. It denotes that the State has failed to meet the burden of demonstrating, *beyond a reasonable doubt,* the sanity of the accused. *Hawkins v. State,* 34 Md. App. 82, 366 A.2d 421 (1976); *See Dorsey v. Solomon,* 604 F.2d 271 (25 Cr. L. 2451 (1979)).

The Chief Justice wrote, in *Addington v. Texas, supra,* that a "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. See, e.g., *Jackson v. Indiana,* 406 U.S. 715 [92 S.Ct. 1845, 32 L.Ed.2d 435] (1972); *Humphrey v. Cady,* 405 U.S. 504 [92 S.Ct. 1048, 31 L.Ed.2d 394] (1972); *In re: Gault,* 387 U.S. 1, [87 S.Ct. 1428, 18 L.Ed.2d 527] (1967); *Specht v. Patterson,* 386 U.S. 605, [87 S.Ct. 1209, 18 L.Ed.2d 326] (1967). . . . [I]t is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or

others can engender adverse social consequences to the individual." 441 U.S. at 425, 99 S.Ct. at 1809, 60 L.Ed.2d at 330-31.

The Court, through the Chief Justice, went on to opine:

"At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. Obviously such behavior is no basis for compelled treatment and surely none for confinement. However, there is the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct. Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered.

The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state. *We conclude that the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." Id.* at 426-27, 99 S.Ct. at 1809-10, 60 L.Ed.2d at 331-32. (Emphasis supplied.)

The Court rejected the suggestion that it apply the criminal law standard of beyond a reasonable doubt to civil commitment "because, given the uncertainties of psychiatric diagnosis it may impose a burden the [S]tate cannot meet and thereby erect an unreasonable barrier to needed medical treatment. . . . To meet due process demands, the standard

has to inform the factfinder that the proof must be greater than the preponderance of evidence standard applicable to other categories of civil cases." *Id.* at 432-33, 99 S.Ct. at 1812-13, 60 L.Ed.2d at 335. *Addington* established the lowest standard that may be employed by the States in civil commitment as, "equal *to or greater than the* 'clear and convincing' standard." [8]

One effect of *Addington* is to create for both the State and the defense counsel a reversal of roles. At the time of the hearing on the issue of the accused's sanity, *vel non,* it is incumbent upon the State to prove, beyond a reasonable doubt, the sanity of the defendant. *Riggleman v. State,* 33 Md. App. 344, 351-52, 364 A.2d 1159, 1163-64 (1976); *Strawderman v. State, supra,* 4 Md. App. at 697-98, 224 A.2d at 892-93. Defense counsel, on the other hand, endeavors to erode the State's proof through the use of the affirmative defense of insanity. Once the trier of fact has found that the defendant was, indeed, insane at the time of the commission of the offense, and concomitantly that the State has not met its burden, the scene shifts and the players change parts. After the examination and evaluation mandated by Laws 1979, ch. 701, § 1 (Md. Ann. Code art. 59, § 27(B)), a hearing on exceptions, be they by the State or by the person who was found not guilty by reason of insanity, must be held by the Court. Laws 1979, ch. 701, § 1 (Md. Ann. Code art. 59, § 27B(c)). At that hearing the State has thrust upon it the duty of proving by clear and convincing evidence that the very person it had earlier unsuccessfully attempted to prove sane, was, in fact, suffering from "a mental disorder and by reason of that disorder would be a danger to himself or the person or property of others if not confined in an institution for in-patient care or treatment." Defense counsel then undertakes to show that the person previously found not guilty because of a mental disorder has, in fact, no disorder at all at the time of the hearing on the exceptions and, if he has such a disorder, he is not a danger to himself or others. Laws 1979, ch. 701, § 1 (Md. Ann. Code art. 59, § 27B(E)).

---

8. *But see* our discussion *ante,* pp. 3 and 4.

We make clear that our holding today is limited to the initial court hearing following the successful interposition of a plea of not guilty by reason of insanity. It is at that hearing, and that hearing alone, that the State must show by *clear and convincing evidence* that the NGRI [9] acquitee "has a mental disorder and by reason of that mental disorder would be a danger to himself, or the person or property of others if not confined in an institution. . . ." Laws 1979, ch. 701, § 1 (Md. Ann. Code art. 59, § 27B(E)). In any subsequent hearing permitted by Md. Ann. Code art. 59, § 15, the burden of proof rests on the person to establish by a preponderance of the evidence that he is not suffering from a mental disorder, and, if so, whether the disorder is of such a nature that confinement in an institution or hospital is necessary for the protection of the person himself or the person or property of others. Md. Ann. Code art. 59, § 15. Appeals from decisions on petitions filed under section 15 are still allowed "as in other equity cases and may be taken by the petitioner or the respondent." Md. Ann. Code art. 59, § 15(e).[10]

Because Laws 1979, ch. 701, § 1 establishes the standard of proof at the *initial* hearing on exceptions following the successful defense of "not guilty by reason of insanity" to be *"upon a preonderance of the evidence,"* that section of the statute is constitutionally infirm. Irrespective of the wording of the statute to the contrary, it must, under *Addington,* be read to provide that the measure of proof is "upon clear and

---

**9.** Laws 1979, ch. 701, effective July 1, 1979, is a clear indication of the legislative will that such a plea be styled "Not guilty by reason of insanity," notwithstanding prior decisions of this Court in Riggleman v. State, *supra,* 33 Md. App. at 350; Sweeney v. State, 6 Md. App. 431, 439, n. 7, 252 A.2d 9, 14 (1969) construing former Md. Rule 720 as abolishing the plea of "not guilty by reason of insanity" and replacing it with "not guilty by reason of insanity as provided by statute." We now think that a plea, seeking to intercalate insanity of a defendant is properly termed "Not guilty by reason of insanity." Laws 1979, ch. 701, § 1 (Md. Ann. Code art. 59, §§ 27, 27A, 27B, and 27C).

**10.** *See* n. 4, *supra,* as to the right to an application for leave to appeal from an adverse, initial hearing after a verdict of NGRI. In section 15 cases, the appeal is a matter of right, in section 27B cases, there is no right of appeal, but an application for leave to appeal.

convincing evidence." [11] The balance of Md. Ann. Code art. 59 is unaffected. Md. Ann. Code art. 1 § 23.[12]

*Lowe, J., concurring:*

I am in complete accord with the majority opinion as written but for a single word. I find no "cloud" over the italicized sentence from the *Daniels v. Superintendent,* 34 Md. App. 173, 180 (1976), quotation,

> *"[h]aving overcome the presumption of sanity in defense of his homicide case as a matter of public judicial record, appellant may no longer rely upon a presumption of sanity."*

*Daniels* was an appeal from an unsuccessful ruling after a hearing on petition for release under Md. Code, Art. 59, § 15, two years *after* his commitment under old § 27. *Id.* at 174. As pointed out by the majority in n. 6, the initial commitment proceeding with which we are preoccupied in the case sub judice, was not enacted until 1979, three years after *Daniels* was decided. In the context of this case I concur that the sentence does not provide even supportive dicta to the State for its theory that the presumption of sanity is lost upon a not-guilty-by-reason-of-insanity acquittal rather than upon the succeeding commitment initially made under the new § 27 proceeding. *Addington v. Texas,* 441 U.S. 418, 60 L.Ed.2d 323 (1979), does not, however, endanger either the holding of *Daniels* or the import of the sentence in the context in which it was written. *Daniels* addresses a § 15 petitioner's burden and remains correct as written. *Randall Williams* addresses the State's newly acquired burden in a contemporary § 27 proceeding and is equally correct.

As pointed out by the majority in its opinion in this case:

> "In any subsequent hearing permitted by Md. Ann. Code art. 59, § 15, the burden of proof rests on the

---

11. The General Assembly of Maryland might want to consider amending the constitutionally infirm section 27B(I).

12. That section of the code provides that on and after July 1, 1973, all statutes "are severable unless the statute specifically provides that its provisions are not severable."

person to establish by a preponderance of the evidence that he is not suffering from a mental disorder . . . ." p. 598.

It follows that such person (*e.g.,* the appellant Daniels) may — at that "subsequent hearing" stage — no longer rely on the presumption of sanity. Neither *Williams* nor *Daniels* should be looked to as authority for the other.